OPINION
{¶ 1} In case No. 03AP-22, defendant-appellant, James M. Gerlach, Jr. ("Mr. Gerlach"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the parties a divorce. In case No. 03AP-872, plaintiff-appellant, Anne Gerlach ("Ms. Gerlach"), appeals from the court's amended judgment modifying Mr. Gerlach's child support obligation. These appeals have been consolidated for purposes of appellate determination.
 {¶ 2} The parties were married on April 6, 1985, and had three children during their marriage: James, born July 13, 1987; Hilary, born July 16, 1989; and Alison, born October 5, 1992. Currently, Ms. Gerlach is employed as a district manager for a women's clothing company, and Mr. Gerlach is the majority owner of The Flooring Group ("TFG") and also does work for another company, Levitate. On May 24, 2000, Ms. Gerlach filed a complaint for divorce. Mr. Gerlach filed a counterclaim for divorce. The parties agreed that they were incompatible and also agreed to a shared parenting plan that resolved the allocation of parental rights and responsibilities. However, the parties disputed the financial aspects of the divorce. The matter was tried to determine, among other things, the distribution of the parties' property and the amount of child and spousal support.
 {¶ 3} Following the trial, the trial court granted the parties a divorce and resolved all outstanding issues in a Decision and Judgment Entry Decree of Divorce filed December 11, 2002. In that judgment (hereinafter referred to as the "December judgment"), among other things, the trial court ordered Mr. Gerlach to pay child support in the amount of $2,916.87 per month and spousal support in the amount of $1,650 per month. Thereafter, Ms. Gerlach filed a motion, pursuant to Civ.R. 60(A), for the trial court to correct what she thought was a clerical error in the court's calculation of child support. Specifically, the child support worksheet in the December judgment did not include in Ms. Gerlach's annual income the spousal support she received from Mr. Gerlach. The trial court granted Ms. Gerlach's motion and issued an Amended Judgment Entry and Decree of Divorce on August 8, 2003 (hereinafter referred to as the "amended judgment"). In the child support worksheet made part of the amended judgment (hereinafter referred to as the "amended worksheet"), the trial court included in Ms. Gerlach's annual income the $19,800 of spousal support she received, and made other changes that ultimately reduced Mr. Gerlach's child support obligation to $1,588 a month. The trial court did not make any other substantive changes in its amended judgment.
 {¶ 4} With respect to other outstanding financial matters, the trial court determined that the marital residence had a market value of $460,000. Because of two outstanding mortgages, there was $155,789 of equity in the residence. The trial court awarded Mr. Gerlach the residence but ordered him to pay Ms. Gerlach half of the equity ($77,894.50). The trial court also allocated an Ohio sales tax debt of approximately $500,000 solely to Mr. Gerlach. This debt was incurred in connection with Mr. Gerlach's previous business, Gerlach Carpet Services, Inc., in the late 1980s and early 1990s for the failure to collect sales tax on products it sold. Finally, the trial court distributed the parties' other property and debts, and ordered Mr. Gerlach to pay more than $29,000 to Ms. Gerlach for her attorney fees.
 {¶ 5} Mr. Gerlach appeals from the December judgment, assigning the following errors:
1. The trial court erred in its award of child support. the trial court's child support award was contrary to the evidence, contrary to ohio law, failed to conform to the ohio child support guidelines, and was improperly calculated under the child support guidelines worksheet.
2. The trial court erred in its award of spousal support. the trial court's spousal support award was contrary to the evidence, and an abuse of discretion.
3. The trial court erred in allocating an ohio sales tax assessment, liens, and liability primarily to appellant. the trial court's categorization and allocation of this debt was contrary to the evidence, and an abuse of its discretion.
4. The trial court erred in ordering appellant to pay attorney fees to appellee. the trial court abused it discretion, its decision was contrary to the evidence, and its award was inequitable.
5. The trial court erred in its valuation of the parties household goods and its effective award to appellee in the amount of $9,000. the court further erred in using such award as a setoff against marital debt.
6. The trial court erred in valuing the equity of the parties' marital residence, and in ordering appellant to pay all debts associated with that property. the trial court abused its discretion and its decision was contrary to the evidence.
7. The trial court erred in its overall division of the parties' property. the trial court abused its discretion, its decision was contrary to the evidence, and its award was inequitable.
 {¶ 6} Ms. Gerlach appeals from the amended judgment, assigning the following error:
The trial court in its decision erred in its failure to address the issue presented pursuant to R.C. § 3119.04(B).
 {¶ 7} Because Ms. Gerlach's sole assignment of error and Mr. Gerlach's first assignment of error both contend the trial court erred in calculating the award of child support, we will address them together. Initially, we note that a trial court has discretion in awarding child support and its decision will not be disturbed absent an abuse of that discretion. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390. An abuse of discretion is more than an error of judgment; it connotes a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 8} In its child support worksheet, made part of the December judgment (hereinafter referred to as the "December worksheet"), the trial court determined that Ms. Gerlach's total annual gross income was $36,000. This figure did not include the spousal support Ms. Gerlach received from Mr. Geralch. Mr. Gerlach's average annual gross income for the years 2000 and 2001 was $201,750. The court arrived at that number by adding Mr. Gerlach's annual: (1) salary from TFG; (2) shareholder distributions from TFG; (3) travel and entertainment allowance from TFG; (4) additional loans he received from TFG; and (5) income from Mr. Gerlach's self-employment with Levitate. The trial court then made several adjustments to the parties' annual gross income. Significantly, the trial court reduced Mr. Gerlach's annual gross income by $19,800, the total amount of court-ordered spousal support he paid to Ms. Gerlach but, as noted above, the trial court did not include this spousal support in Ms. Gerlach's gross income. Mr. Gerlach contends in his first assignment of error that the trial court erred by not including this $19,800 as income to Ms. Gerlach in the December worksheet. However, because the trial court corrected this omission in its amended worksheet, this portion of Mr. Gerlach's first assignment of error is moot.
 {¶ 9} Mr. Gerlach also argues in his first assignment of error that the trial court erred when it determined, in the December worksheet, that his total child support obligation was $40,391. After adjustments, the Gerlach's combined adjusted annual gross income was $234,625.81. Line 17 of the worksheet then required the trial court to enter the basic combined child support obligation amount. This figure represents the total amount of support the children require on a yearly basis. The figure is derived from a schedule provided in R.C. 3119.021, which bases the amount of total support on the number of children and the combined income of the parents. The schedule provides for standard child support obligation amounts for parents with combined incomes up to $150,000. For parents whose combined income exceeds this amount, R.C. 3119.04(B) provides:
If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.
 {¶ 10} For parents with a combined annual income greater than $150,000 and three children, such as the Gerlachs, the schedule provides that the minimum total child support obligation is $25,823. Although the trial court listed the total child support obligation as $40,391 in the December worksheet, it subsequently reduced this amount to the schedule minimum of $25,823 in its amended worksheet. Therefore, this portion of Mr. Gerlach's first assignment of error is also moot.
 {¶ 11} Ms. Gerlach asserts in her sole assignment of error that the trial court erred by not awarding child support in an amount greater than the schedule minimum of $25,823. We disagree. Although the trial court has discretion to award child support in excess of the schedule set forth in R.C. 3119.021 if it finds that the schedule amount is unjust or inappropriate and not in the best interest of the children, it is not required to award more than the schedule amount. Additionally, Ms. Gerlach did not contend or argue below that the schedule amount would be unjust or inappropriate and not in the best interest of the children. Therefore, the trial court did not abuse its discretion in awarding an amount consistent with the statutory schedule.
 {¶ 12} Mr. Gerlach also argues in his first assignment of error that the trial court erred by failing to properly calculate his annual gross income. The trial court determined that his income from TFG consisted of his annual salary, shareholder distributions and loans, and travel/entertainment allowance. The trial court also included income Mr. Gerlach received from his employment with Levitate. Mr. Gerlach does not dispute that his annual salary and shareholder distributions from TFG were properly classified as income. He disputes the inclusion of loans and travel/entertainment allowances he received from TFG as well as his income from Levitate. We will address each of these arguments separately.
 {¶ 13} The loans were monies Mr. Gerlach received from TFG over and above his salary and shareholder distributions. On most occasions, Mr. Gerlach simply signed checks on behalf of TFG made payable to himself. As the majority owner of TFG, Mr. Gerlach was not required to obtain the approval of any other owner before he wrote these checks to himself. Richard Ferguson, a certified public accountant who testified on Ms. Gerlach's behalf, reviewed TFG's financial records and determined that Mr. Gerlach received $36,000 in such loans in 2000, $77,500 in 2001, and $25,700 in 2002, as of the date of the hearing. Mr. Ferguson testified that these monies were treated on TFG's financial books as loans and the corporate tax return also reflected them as shareholder loans. He also testified, however, that there were no promissory notes or other documentation indicating that Mr. Gerlach was obligated to pay this money back to the company. Therefore, it was Mr. Ferguson's opinion that the monies Mr. Gerlach received were not loans but, rather, income to Mr. Gerlach. Mr. Gerlach testified that he was obligated to pay these monies back to the company. One of Mr. Gerlach's partners in TFG, Michael Caupano, also testified that Mr. Gerlach was obligated to pay these monies back to the company. However, Mr. Caupano admitted that there was no documentation reflecting this obligation, nor was any approval required for Mr. Gerlach to advance these monies to himself.
 {¶ 14} It was not an abuse of discretion for the trial court to include these monies as income to Mr. Gerlach. See Levine v.Levine, Franklin App. No. 02AP-399, 2002-Ohio-7198, at ¶ 39. InLevine, this court concluded that it was within the trial court's discretion to include shareholder distributions and loans as income where the evidence showed the husband used those monies on a regular basis to pay personal expenses. Here, Mr. Gerlach averaged $46,400 in loans from TFG from 2000 through 2002, and he testified that he used the loans to pay personal expenses. Additionally, Mr. Gerlach is the majority shareholder in TFG and did not need approval to loan himself these monies. Cf. Zimmerv. Basil (Jan. 30, 1995), Butler App. No. CA94-02-050 (holding that shareholder loan repayments were properly classified as income to sole owner of business who exercised complete control over compensation). There was also no written documentation to show that he was obligated to pay these monies back to the company. Therefore, it was not an abuse of discretion for the trial court to treat these loans as income to Mr. Gerlach for purposes of calculating child support.
 {¶ 15} Mr. Ferguson also testified that Mr. Gerlach's income should include $18,000 he received each year for travel/entertainment expenses because he could not find any documentation showing how this money was spent. Mr. Gerlach contended that he was the company's rainmaker and that he used his entire monthly travel/entertainment allowance to carry out this role for the company. However, Mr. Gerlach provided no documentation for these expenses. Mr. Gerlach's own accountant testified that Mr. Gerlach should have documentation to support these expenses. Therefore, the trial court did not abuse its discretion by including money Mr. Gerlach received for travel/entertainment expenses as income to Mr. Gerlach.
 {¶ 16} Mr. Gerlach also contends the trial court erred by including in his income commissions he received from Levitate. Mr. Gerlach testified that he still does minor work for Levitate and, over the last couple of years, has made approximately $30,000 a year from Levitate. He argues that this income is nonrecurring because it is entirely based on commission sales. Under R.C. 3119.01(C)(7)(e), nonrecurring income is excluded from a parent's gross income when calculating child support. "Nonrecurring income" is defined as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8). Mr. Gerlach's W-2 forms for the years 2000 and 2001 indicate that he received an average of $25,117 in income from Levitate. He did not testify that this income would cease, although he indicated it may slow down. Based on this evidence, the trial court did not abuse its discretion by including income from Levitate as part of Mr. Gerlach's annual income for purposes of determining child support.
 {¶ 17} Mr. Gerlach also asserts in his first assignment of error that the trial court erred by failing to deviate from the worksheet's amount of child support because the parties divided parenting time equally. However, Mr. Gerlach failed to raise this issue before the trial court. An appellate court will not consider an issue raised for the first time on appeal when the issue could have been raised before the trial court. McEnery v.McEnery (Dec. 21, 2000), Franklin App. No. 00AP-69. "This rule is especially compelling when the issue concerns a discretionary determination, such as a child support obligation." Id. Therefore, this portion of Mr. Gerlach's first assignment of error is overruled.
 {¶ 18} Mr. Gerlach also argues in his first assignment of error that the trial court improperly continued his child support obligation until the children reached the age of 19. In its amended judgment, the trial court ordered Mr. Gerlach's child support obligation to continue "until the child graduates from high school or reaches the age of nineteen, or the child is otherwise emancipated; or the child support order is modified by the Court." Although this language does not precisely track the language in R.C. 3119.86, it does indicate that Mr. Gerlach's child support obligation continues after the child turns 18 only if the child is still in high school and not otherwise emancipated. This is consistent with R.C. 3119.86(A)(1)(c). Therefore, we find no error.
 {¶ 19} Mr. Gerlach further contends the trial court erred in dividing the minor children's extraordinary medical expenses. The trial court ordered Mr. Gerlach to pay 80 percent of the children's extraordinary medical expenses. Mr. Gerlach contends it would be more appropriate to equally divide the children's extraordinary medical expenses. We disagree.
 {¶ 20} The allocation of extraordinary medical expenses is provided for in R.C. 3119.05(F), which states that when a trial court computes an award of child support, it "shall issue a separate order for extraordinary medical or dental expenses * * *, and may consider the expenses in adjusting a child support order." The statute, by the use of the word "may," gives the trial court discretion to consider the allocation of the expenses when adjusting a child support order. The award of extraordinary medical expenses is a matter left to the sound discretion of the trial court. Heuer v. Heuer (June 8, 1993), Franklin App. No. 92AP-1512, quoting Hirshberger v.Hirshberger (Apr. 27, 1990), Lucas App. No. L-89-018.
 {¶ 21} Given that Mr. Gerlach's income for purposes of child support was six times greater than Ms. Gerlach's income, the trial court did not abuse its discretion in ordering Mr. Gerlach to pay a higher percentage of the children's extraordinary medical expenses. Hutchinson v. Hutchinson (May 29, 1998), Greene App. No. 97-CA-40 (interpreting R.C. 3113.215, former version of statute).
 {¶ 22} Mr. Gerlach also contends in his first assignment of error that the trial court erred in awarding him only two of the three children's federal income tax exemptions. Mr. Gerlach claims that he should have received all of the children's tax exemptions considering the court's excessive award of child support, and considering that he could make better use of the exemptions given his tax bracket. However, the decision to allocate tax exemptions is a matter left to the discretion of the trial court. Boose v. Lodge, Hardin App. No. 6-03-04, 2003-Ohio-4257, at ¶ 4; Hutchinson, supra, citing Mizer v.Mizer (Mar. 3, 1989), Guernsey App. No. 88CA12.
 {¶ 23} In cases in which the parties do not agree which parent will receive the children's tax exemptions, R.C. 3119.82
requires the trial court to consider "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." This statute requires the court to consider more than merely tax savings in allocating tax exemptions. Reichman v.Reichman, Tuscarawas App. No. 2001 AP 12 0112, 2002-Ohio-4712, at ¶ 38; Singer v. Dickinson (1992), 63 Ohio St.3d 408.
 {¶ 24} The trial court considered the net tax savings to Mr. Gerlach, the relative needs and financial circumstances of the parties, the amount of time each parent spends with the children, and the effect of the phase-out provisions of the federal tax laws in awarding Mr. Gerlach two of the three tax exemptions. The trial court properly took into account the net tax savings Mr. Gerlach would receive from the tax exemptions, as well as the significant disparity in the parties income in arriving at its decision. Mr. Gerlach simply disagrees with the trial court's conclusion. Given the trial court's consideration of the relevant factors in R.C. 3119.82, we refuse to substitute our judgment for that of the trial court on this issue. The trial court did not abuse its discretion in its distribution of the children's tax exemptions. Tarr v. Walter, Jefferson App. No. 01 JE 7, 2002-Ohio-3188, at ¶ 44.
 {¶ 25} In conclusion, Mr. Gerlach's first assignment of error is overruled in part and rendered moot in part. Ms. Gerlach's lone assignment of error is overruled.
 {¶ 26} Mr. Gerlach contends in his second assignment of error that the trial court's award of spousal support was an abuse of discretion. The trial court ordered Mr. Gerlach to pay $1,650 per month in spousal support. Such support was to continue until the earliest of the following: (1) the death of either party; (2) appellee's remarriage or cohabitation with an unrelated adult male; or (3) a period of no fewer than 60 months, or July 15, 2007. The trial court retained jurisdiction to modify spousal support based upon a change of circumstances.
 {¶ 27} A trial court has broad discretion in determining whether to award spousal support. Vanderpool v. Vanderpool
(1997), 118 Ohio App.3d 876, 879. The amount of a support award also remains within the discretion of the trial court. Moore v.Moore (1992), 83 Ohio App.3d 75, 78. An appellate court should not alter an award absent a finding that the trial court abused its discretion, which means that the trial court's determination was unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 28} Mr. Gerlach first contends the trial court created an unclear and possibly indefinite award of spousal support in its order. We disagree. The trial court's order provides for the termination of his spousal support obligation upon the occurrence of certain events or, at the latest, July 15, 2007. There is no danger of an indefinite obligation.
 {¶ 29} Mr. Gerlach also contests the award and amount of spousal support. Any grant of spousal support for sustenance is dependent upon the trial court's determination that support is reasonable and appropriate. In making this determination, the trial court must consider all the relevant factors set forth in R.C. 3105.18, and may not consider any one factor in isolation. See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93. The factors in R.C. 3105.18(C)(1) are:
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 30} After considering the factors set forth in R.C.3105.18(C)(1), Ms. Gerlach's needs and Mr. Gerlach's ability to pay, the trial court found that spousal support was appropriate and reasonable. Mr. Gerlach takes issue with the trial court's assessment of these factors. He first argues that the same error he alleges the trial court made in calculating his income for child support purposes also affected the trial court's review of the factors set forth in R.C. 3105.18(C)(1)(a) and (b). As noted earlier, the trial court properly calculated Mr. Gerlach's income for child support purposes. Because the evidence indicated that Mr. Gerlach makes significantly more money than Ms. Gerlach and has a greater earning potential, the trial court did not err in its consideration of these two factors. Factors (c), (d), (e) and (f) were not contested. Both parties were of relatively good health and neither had significant retirement benefits. The marriage lasted 17 years and both parties were already employed outside of the home at the time of trial.
 {¶ 31} Mr. Gerlach next takes issue with the trial court's determination that the parties maintained a high standard of living during the marriage. Id. at (g). Evidence indicated that the parties lived in a house in Upper Arlington valued at $460,000. They were members of the Scioto Country Club. The initial investment to enter the club was $14,000 and the club's monthly dues were approximately $400 a month. Also, the parties paid $250 a month to lease a horse for their daughter's use. Mr. Gerlach testified that he would take his children to six to eight music concerts a year, one of which they would travel to by limousine. The parties went on family vacations. Arguably, the trial court should not have considered the vacations Mr. Gerlach took with his children during the pendency of the divorce in its analysis of this factor. Nevertheless, there was sufficient other evidence in the record to support the trial court's conclusion that the parties maintained a high standard of living during their marriage.
 {¶ 32} The trial court also addressed factors (h) through (n). Both parties attended college, although Mr. Gerlach did not receive a degree. Id. at (h). The trial court then considered the relative assets and liabilities of the parties. Id. at (i). During most of the marriage, Ms. Gerlach stayed at home and took care of the children while Mr. Gerlach worked outside the home. Id. at (j). Factor (k) was inapplicable as Ms. Gerlach was not seeking to acquire further education or training. Both parties submitted tax analyses to determine the potential tax consequences of an award of spousal support and the trial court considered those consequences. Id. at (l).
 {¶ 33} Mr. Gerlach takes issue with the trial court's analysis of factor (m), which required the trial court to consider the lost income production capacity of either party resulting from their marital responsibilities. In its analysis, the trial court noted that Ms. Gerlach stayed at home for the majority of the marriage and earned significantly less than Mr. Gerlach did during this time. Although there was no specific evidence indicating that Ms. Gerlach would have greater earning potential if she had not stayed at home during the parties' marriage, we cannot discern how the trial court assessed this factor. Even if the trial court incorrectly assessed this factor, this error was harmless given the totality of the factors considered. Iorillo v. Iorillo (Oct. 2, 1996), Lorain App. No. 96CA006323. Lost earning potential is only one of the factors the trial court must consider in making its determination. Danielsv. Daniels, Franklin App. No. 01AP-1146, 2002-Ohio-2767, at ¶ 24.
 {¶ 34} Finally, the trial court considered other factors it found relevant and equitable, including the fact that Ms. Gerlach moved out of the marital residence, that she received loans from her family after she moved out, and that she is now seeing another man. Id. at (n).
 {¶ 35} The trial court considered all of the factors in R.C.3105.18(C)(1) in determining that spousal support was appropriate and reasonable. Significantly, the parties' marriage lasted 17 years and, for the majority of that time, Ms. Gerlach stayed at home raising the parties' three children while Mr. Gerlach worked outside the home. The Gerlachs enjoyed a high standard of living during their marriage and Mr. Gerlach now earns significantly more money than Ms. Gerlach. After considering all of the statutory factors, the trial court found that an award of spousal support was appropriate and reasonable. We cannot substitute our judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. Given the totality of the circumstances and the evidence presented to the trial court, the trial court did not abuse its discretion by awarding Ms. Gerlach spousal support. Furthermore, once the 14 factors have been considered, the amount of spousal support is within the sound discretion of the trial court.Purden v. Purden (June 2, 1994), Franklin App. No. 93APF10-1428. Based upon the evidence presented to the trial court, the trial court did not abuse its discretion with respect to the amount of spousal support awarded to Ms. Gerlach. Accordingly, appellant's second assignment of error is overruled.
 {¶ 36} Mr. Gerlach contends in his third assignment of error that the trial court improperly awarded him the entire Ohio sales tax debt. We disagree. Upon granting a divorce, the trial court is required to divide and distribute the marital estate between the parties in an equitable manner. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130. In doing so, the trial court is necessarily vested with wide discretion in formulating an equitable distribution of such property. Id.; Berish v. Berish
(1982), 69 Ohio St.2d 318, 319. As a result, the trial court's division of marital property will not be disturbed on appeal unless the trial court abused its discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore, supra. "[T]he mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." Cherry v. Cherry (1981),66 Ohio St.2d 348, 353.
 {¶ 37} Although Mr. Gerlach now complains that he received the entire Ohio sales tax debt, he testified at trial that he would accept this debt if he was awarded the marital residence and all of his interest in the business. Specifically, when questioned by counsel about the marital residence and the business, he testified as follows:
Q: Do you want to keep the house?
A: Yes.
Q: Do you want to keep the business?
A: Yes.
Q: And are you willing, if you can keep the house, keep the business, to take care of all of the debt, no matter what that is?
A: Yes. (Vol. II, Tr. 101.)
 {¶ 38} Mr. Gerlach cannot complain on appeal about a distribution of assets and liabilities he advocated. Mr. Gerlach testified that he would accept the entire amount of this debt if he received the residence and his full interest in the business. Additionally, one of Mr. Gerlach's proposed distribution plans reflected his willingness to accept the entire Ohio sales tax debt if he was also awarded the residence and his full interest in the business. The trial court awarded Mr. Gerlach the marital residence and his interest in TFG. The trial court also allocated to him the Ohio sales tax debt. Because Mr. Gerlach proposed this distribution, even if this distribution was in error, we will not allow him to take advantage of error which he induced. Cf. Youngv. Young (Dec. 29, 1993), Lorain App. No. 93CA005554 (refusing to address merits of alleged error where appellant induced error); Crock v. Crock (Mar. 29, 1991), Noble App. No. 202 (applying invited error doctrine to mistaken value of property). Mr. Gerlach's third assignment of error is overruled.
 {¶ 39} For ease of analysis, we will address Mr. Gerlach's fourth assignment of error last. His fifth assignment of error concerns the trial court's valuation of household goods Ms. Gerlach left in the marital residence when she moved out. A trial court's valuation of assets will be reversed only for an abuse of discretion. James v. James (1995), 101 Ohio App.3d 668, 681. Mr. Gerlach contends the trial court erred because: (1) Ms. Gerlach did not request the household goods; and (2) the only evidence Ms. Gerlach introduced to support the value of the goods was her own estimate of the replacement value of these goods. We disagree.
 {¶ 40} First, Ms. Gerlach testified that of the 27 household items she left at the marital residence, she only wanted possession of an antique marble top table which she valued at $1,200. The trial court awarded Ms. Gerlach that table. Ms. Gerlach asked to be financially compensated only for the items she left at the martial residence and later replaced. Second, Ms. Gerlach's list of the household goods she left in the residence were valued at $18,490. Her list indicated the value of the household goods she replaced was $7,370. The trial court valued the replacement cost of these goods at $9,000. Mr. Gerlach did not submit any evidence regarding the replacement cost for these household goods. Under these circumstances, we cannot say that the trial court abused its discretion in valuing the goods as it did. Riley v. Riley (May 8, 2000), Butler App. No. CA99-06-107. Mr. Gerlach's fifth assignment of error is overruled.
 {¶ 41} Mr. Gerlach contends in his sixth assignment of error that the trial court erred in its valuation of the equity in the marital residence. The parties stipulated that the residence had a market value of $460,000 and that there were two mortgages on the residence totaling $304,211, leaving $155,789 in equity in the marital residence. The trial court awarded the residence to Mr. Gerlach but ordered him to pay Ms. Gerlach $77,894.50, representing one-half of the equity in the residence. Mr. Gerlach contends the trial court erred by failing to consider the Ohio Sales Tax Certificate of Judgment liens on the property totaling more than $500,000. He argues that these liens would eliminate any equity in the house. We disagree.
 {¶ 42} The tax judgments referred to by Mr. Gerlach were not liens on the martial residence at the time of the hearing because the residence was solely in Ms. Gerlach's name. The tax judgments were only against Mr. Gerlach. Therefore, at the time of the hearing, there was $155,789 of unencumbered equity in the martial residence. It was not an abuse of discretion for the trial court to divide that equity equally between the parties. The fact that the tax judgments might become liens on the residence once it transferred to Mr. Gerlach is irrelevant — particularly given that Mr. Gerlach accepted the full amount of this debt in exchange for the marital residence and his full interest in TFG. Therefore, Mr. Gerlach's sixth assignment of error is overruled.
 {¶ 43} Mr. Gerlach contends in his seventh assignment of error that the trial court erred in its overall distribution of the parties' property. The trial court is vested with broad discretion in determining what constitutes an equitable property division. Walker v. Walker (1996), 112 Ohio App.3d 90, 93;Neel v. Neel (1996), 113 Ohio App.3d 24, 32; Holcomb, supra, at 131. An equitable distribution of property need not necessarily be equal. Winkler v. Winkler (1997),117 Ohio App.3d 247, 252.
 {¶ 44} Mr. Gerlach received the marital residence valued at $460,000. However, he also received two mortgages on the house, totaling $304,208, and the Ohio sales tax debt totaling more than $500,000. Mr. Gerlach also was awarded his full ownership interest in TFG, the value of which was stipulated at $102,000. Mr. Gerlach also received the membership to the Scioto Country Club and debt to the Internal Revenue Service totaling $26,442.23, as well as credit card debt of $1,798.
 {¶ 45} Mr. Gerlach also was awarded a life insurance policy the trial court valued at $23,383. This amount was the cash value of the insurance policy before Mr. Gerlach unilaterally withdrew funds from the policy during the course of the divorce proceedings. He testified that he withdrew these funds to pay personal expenses. Mr. Gerlach contends the value of the insurance policy should be $1,713, the cash value of the policy after his withdrawals. We disagree. "`The determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion.'" Glick v. Glick (1999), 133 Ohio App.3d 821, 828, citing Gullia v. Gullia (1994), 93 Ohio App.3d 653, 666; cf.Salmons v. Salmons (June 11, 1987), Franklin App. No. 86AP-1075. The trial court did not abuse its discretion by valuing the insurance policy when it did, given Mr. Gerlach's withdrawals from the policy. Those withdrawals reduced the policy's value by more than $20,000. Equitable considerations, rather than strict rules, dictate the court's determination of a date prior to trial for purposes of valuing marital assets.Hoffman v. Hoffman (Aug. 11, 1994), Franklin App. No. 94AP-48.
 {¶ 46} Ms. Gerlach received credit card debts totaling $4,836.27, a marble table top valued at $1,200, and $9,000 for her share of household goods left in the marital residence. She also received one-half of the equity in the marital residence. The parties stipulated that they did not have any significant retirement, checking or other financial accounts. Both parties retained their own leased vehicles. Ms. Gerlach received nothing for Mr. Gerlach's ownership interest in TFG.
 {¶ 47} In sum, we fail to see how the distribution of property was inequitable. To the extent Mr. Gerlach received a much larger amount of debt in the trial court's distribution, the vast majority of that debt was the Ohio sales tax debt, which Mr. Gerlach agreed to accept in exchange for the marital residence and his full ownership interest in TFG. The trial court did not abuse its discretion in distributing the parties' property. Mr. Gerlach's seventh assignment of error is overruled.
 {¶ 48} Finally, Mr. Gerlach argues in his fourth assignment of error that the trial court erred when it ordered him to pay $29,162.38 to Ms. Gerlach for her attorney fees. Pursuant to R.C.3105.18(H), the trial court has the authority to award reasonable attorney fees in divorce cases to either party. In order to award attorney fees under R.C. 3105.18(H), a trial court must determine that the attorney fees are reasonable, the payor has the ability to pay the attorney fees, and the other party will be prevented from fully litigating his or her rights and adequately protecting his or her interests if attorney fees are not awarded. See Trottv. Trott (Mar. 14, 2002), Franklin App. No. 01AP-852, at ¶ 10. This determination "should take into consideration * * * the earning abilities of the parties and the relative assets and liabilities of each." Birath v. Birath (1988),53 Ohio App.3d 31, 39. In general, it is within the sound discretion of the trial court to award attorney fees in a divorce action. Trott,
at ¶ 8, citing Rand v. Rand (1985), 18 Ohio St.3d 356, 359; see, also, Birath, supra.
 {¶ 49} Mr. Gerlach does not contest the reasonableness of Ms. Gerlach's attorney fees. Rather, he contends that he does not have the ability to pay those fees and that Ms. Gerlach was not prevented from litigating the divorce.
 {¶ 50} It is debatable whether Mr. Gerlach could afford to pay Ms. Gerlach's attorney fees given his annual income and substantial debts. Although he makes more than $200,000 per year from TFG and Levitate, the Ohio sales tax obligation alone exceeds $500,000. However, regardless of whether Mr. Gerlach has the financial resources to pay Ms. Gerlach's attorney fees, the record is clear that Ms. Gerlach was not prevented from fully litigating her rights and protecting her interests if attorney fees are not awarded.
 {¶ 51} Ms. Gerlach testified that she earned $36,000 per year from her new job. She also receives child and spousal support. Ms. Gerlach further testified that she borrowed almost $15,000 from her father to pay her attorney fees. Although some courts have awarded attorney fees despite the fact that the spouse was loaned money to pay the attorney fees, Tate v. Tate, Richland App. No. 02-CA-86, 2004-Ohio-22, at ¶ 20-31; McAndrews v.McAndrews (Jan. 24, 1996), Hamilton App. No. C-940684, awarding attorney fees in this case was an abuse of discretion given the overall distribution of assets and liabilities. Of particular significance is Ms. Gerlach's receipt of $77,894.50 for her one-half interest in the equity in the marital residence. Given this distribution, Ms. Gerlach was in a position to fully litigate her rights and to protect her interests even if she repays her father for funds he previously advanced her for attorney fees.
 {¶ 52} Because we find that the trial court abused its discretion in awarding attorney fees, we reverse that portion of the trial court's decision and sustain Mr. Gerlach's fourth assignment of error.
 {¶ 53} In conclusion, Ms. Gerlach's lone assignment of error is overruled. Mr. Gerlach's first assignment of error is overruled in part and rendered moot in part. His fourth assignment of error is sustained, and his second, third, fifth and seventh assignments of error are overruled. The amended judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
BOWMAN and SADLER, JJ., concur.