DECISION AND JUDGMENT ENTRY
{¶ 1} Thelma L. Soulsby appeals the judgment of the trial court in this contested divorce action. She contends that the trial court abused its discretion when it failed to award her an equitable share of Mr. Soulsby's retirement benefits in its division of the marital property and instead, ordered Mr. Soulsby to pay spousal support from his monthly retirement benefits. She contends that the trial court improperly "commingled" the issues of property division and spousal support because it should have awarded her a portion of his retirement, which was a marital asset, and then also made a separate award of spousal support. Domestic relations law requires the trial court to declare retirement benefits earned during the marriage a marital asset. However, there is no absolute requirement that they must be divided in the property distribution. Because trial courts have broad discretion in fashioning an equitable division of property and, *Page 2 
when appropriate, awarding spousal support, we cannot say that the trial court's disposition of Mr. Soulsby's retirement benefits was unreasonable, arbitrary, or unconscionable. When viewed in its entirety, the property division was equitable. And in light of Ms. Soulsby's specific request that the trial court award her spousal support from Mr. Soulsby's retirement benefits, we see no abuse of discretion here.
 {¶ 2} Ms. Soulsby also contends that the trial court erred in refusing to allow her to keep the proceeds from the post-separation, pre-divorce sale of the parties' Florida mobile home and its furnishings. She argues that the property was not subject to property division because she sold it before she filed the divorce action in this case. The trial court chose May 1, 2004, as the de facto termination date of the marriage in light of their permanent separation in late April of 2004. Accordingly, the court found it would be inequitable for the proceeds of the sale of the parties' jointly-owned mobile home not to be considered marital property. Because the record supports the trial court's use of that date and the property existed as of that date, the trial court did not err in considering it martial property subject to division. Finally, Ms. Soulsby argues she was entitled to all the proceeds because she sold the property to reimburse herself for unpaid spousal support Mr. Soulsby owed her under a temporary court order from a previously filed divorce action and for various utility bills. However, she sold the martial property without Mr. Soulsby's knowledge or consent and for an amount that may have been less than the fair market value. Therefore, even if he owed her money under a divorce action that she later voluntarily dismissed, the trial *Page 3 
court's decision to essentially split the proceeds equally was equitable under the circumstances.
 I. Facts {¶ 3} The parties were married in 1986, and have no children together. In April 2004, they permanently separated. Ms. Soulsby filed a complaint for divorce in October 2004, but she voluntarily dismissed that case without prejudice on February 17, 2006. Ms. Soulsby filed this divorce action on March 3, 2006. Mr. Soulsby filed an answer and counterclaim. Following a trial in December 2006, the trial court awarded the parties a divorce.
 {¶ 4} In its division of the marital property, the trial court concluded that the parties had marital property interest in two pieces of real property with a mobile home on each, one located in Stockport, Ohio, (Kosky Drive property) and the other in Pomeroy, Ohio, (Pomeroy Pike property), multiple motor vehicles, a motor home, two riding lawnmowers, and various items of personal property. The trial court also found that Mr. Soulsby had accrued an interest in a retirement account during their marriage from his employer, Ravenswood Aluminum, and that Ms. Soulsby did not have a pension plan. The trial court also found that during their marriage the parties purchased a mobile home located in Florida and that subsequent to the parties' separation and prior to the filing of this divorce action, Ms. Soulsby sold the mobile home and its furnishings for $9,000.00 without Mr. Soulsby's consent. She retained all of the sale proceeds.
 {¶ 5} The trial court awarded Mr. Soulsby the Kosky Drive property. It gave Ms. Soulsby the Pomeroy Pike property, subject to a $6,900.00 lien in Mr. *Page 4 
Soulsby's favor — $2,400 for a down payment he had made on the property and an additional $4,500.00 for one-half of the proceeds from Ms. Soulsby's sale of the Florida property. The trial court awarded each party their respective motor vehicles and gave Ms. Soulsby the motor home. It ordered the sale of the other vehicles and an equal distribution of the proceeds. Although it acknowledged part of Mr. Soulsby's pension was a marital asset, the trial court did not award Ms. Soulsby any portion of it in the distribution of marital property.
 {¶ 6} Then, after concluding that it had made an equitable division of the marital and separate property, the trial court considered the issue of spousal support. The court specifically noted that Ms. Soulsby had requested spousal support in the form of one-half of Mr. Soulsby's retirement and had requested a Qualified Domestic Relations Order ("QDRO") to effectuate disbursement of that amount. The trial court then found that Mr. Soulsby receives $688.00 per month in retirement benefits from Ravernswood. After stating that it had applied the factors set forth in R.C. 3105.18(C)(1) to the evidence presented at trial, the trial court ordered Mr. Soulsby to pay $250.00 per month to Ms. Soulsby in spousal support until his death and directed that the spousal support payments be withheld from his retirement as requested. The trial court did not retain jurisdiction over the matter of spousal support. Ms. Soulsby now appeals.
 II. Assignments of Error {¶ 7} Ms. Soulsby raises the following assignments of error:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO AWARD APPELLANT AN EQUITABLE SHARE OF APPELLEE'S RETIREMENT BENEFITS, AND INSTEAD, AWARDED APPELLANT HER SHARE OF SAID MARITAL ASSET AS SPOUSAL SUPPORT. *Page 5 
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING APPELLANT OWED APPELLEE $4,500 FROM THE PRE-DIVORCE SALE OF THE PARTIES' FLORIDA MOBILE HOME.
 III. Standard of Review {¶ 8} A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property, and when appropriate, in awarding spousal support. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (citations omitted), see, also, Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609,635 N.E.2d 308, citing Berish v. Berish (1982), 69 Ohio St.2d 318,432 N.E.2d 183. Although its discretion is not unlimited, it has authority to do what is equitable. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131, 541 N.E.2d 597, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348,355, 421 N.E. 2d 1293. We will not reverse a trial court's allocation of marital property absent an abuse of discretion. Holcomb,44 Ohio St.3d at 131. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore,5 Ohio St.3d at 219. When applying this standard of review, we may not freely substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Rather, a reviewing court is limited to determining whether, considering the totality of circumstances, the trial court abused its discretion. Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222, 459 N.E. 2d 896, citingBlakemore, 5 Ohio St.3d at 218-220.
 IV. Mr. Soulsby's Retirement Benefits *Page 6 {¶ 9} In her first assignment of error, Ms. Soulsby contends that the trial court improperly "commingled" the issues of property division and spousal support by failing to award her an equitable share of Mr. Soulsby's retirement benefits, with a survivorship interest, and instead ordering him to pay $250 per month in spousal support from his retirement benefits until his death.
 {¶ 10} Trial courts are required to divide marital and separate property equitably between the spouses. R.C. 3105.171(B). Marital property should be divided equally unless such an equal division would produce an inequitable result. R.C. 3105.171(C); See, also,Holcomb, 44 Ohio St.3d at 132. Retirement benefits and pensions earned during the course of the marriage are marital assets, which the court must consider in dividing marital property. R.C. 3105.171(A)(3)(a)(i) and (ii); See, also, Bisker, supra, at 609, and Erb v. Erb (1996),75 Ohio St.3d 18, 20, 661 N.E.2d 175. "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292 at paragraph one of the syllabus. Accordingly, a trial court's distribution of pension or retirement benefits will not be disturbed on appeal absent an abuse of discretion. Id. at 180-181.
 {¶ 11} Under R.C. 3105.171(C)(3), trial courts must "provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section3105.18 of the Revised Code *Page 7 
and without regard to any spousal support so awarded." Furthermore, R.C.3105.18(B) provides that trial courts may award reasonable spousal support to either party "upon the request of either party and after the court determines the division or disbursement of property under section3105.171 of the Revised Code."
 {¶ 12} Ms. Soulsby contends that the trial court's disposition of Mr. Soulsby's retirement benefits was an abuse of discretion because it is not part of the distribution of marital property, negates her survivorship rights under the terms of the plan and in effect, precluded her from receiving additional spousal support under R.C. 3105.18 even though she was an excellent candidate. Citing our decision in Levine v.Levine (Sept. 23, 1997), 4th Dist. No. 96CA17, unreported, she contends that R.C. 3105.171(C)(3) expressly prohibits trial courts from commingling property division with spousal support. In Levine, the trial court properly found the husband's retirement benefits to be marital property, but incorrectly treated his current benefit payments as his separate income, akin to the wife's current earnings. The trial court did not award the wife spousal support, but rather retained jurisdiction to impose spousal support in the future, reasoning that the parties would no longer have substantially equal net monthly incomes once the wife retired. In Levine we were unable to discern from the trial court's order whether it awarded all of the husband's retirement benefits to the husband, or alternatively, made no division and improperly attempted to reserve jurisdiction to divide his benefits at some later date. Nonetheless, we concluded that the trial court improperly commingled the issue of spousal support and the *Page 8 
property division of the parties' retirement benefits, in violation of R.C. 3105.171(C)(3). We also concluded that to the extent the trial court treated the husband's pension current payments as his individual property, it abused its discretion.
 {¶ 13} However, in this case there is nothing in the record to suggest the trial court decided the retirement benefits were Mr. Soulsby's separate property. Rather, the court specifically acknowledged at least a portion of them were marital property. Moreover, there is no requirement that the court must, as a matter of law, divide marital pension benefits. It must simply consider the pension plan as a marital asset in reaching an equitable division of marital property.Levine, supra, at *5, citing Holcomb at 130-133. It did so here.
 {¶ 14} Thus, we are limited to determining whether, considering the totality of circumstances, the trial court abused its discretion. Id. Based on the totality of the circumstances, we find that the trial court made an equitable division of the parties' marital assets even though it did not award her a portion of his retirement benefits.
 {¶ 15} After careful consideration of the evidence presented, the trial court awarded Ms. Soulsby the real estate and the mobile home that served as the marital residence, the parties' motor home, and several items of personal property. The trial court also equitably divided the parties' motor vehicles and the proceeds from the sale of the parties' Florida mobile home with its furnishings. The trial court also properly concluded that Mr. Soulsby accrued an interest in a retirement account during the marriage. *Page 9 
 {¶ 16} When considering a fair and equitable distribution of Mr. Soulsby's retirement, the trial court was required to apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the retirement plan, and the reasonableness of the result. See Hoyt, 53 Ohio St.3d at 177. Our review of the record, however, shows that there was only minimal evidence presented concerning Mr. Soulsby's retirement benefits. For example, the actual martial value of Mr. Soulsby's retirement benefits was never established. And while Ms. Soulsby's attorney argued during his closing arguments that Ms. Soulsby should be entitled to the retirement's survivorship rights, there was no evidence presented at trial establishing that the parties had elected a survivorship benefit at the time of Mr. Soulsby's retirement as Ms. Soulsby now contends.[1] Rather, the evidence simply showed that Mr. Soulsby worked for Ravernswood for 30 years, retiring in 1992, and that he receives $688.00 per month in benefits.
 {¶ 17} As Mr. Soulsby points out, the evidence at least suggests that a substantial amount of his benefit would have accrued prior to the parties' marriage in 1986. More importantly, however, a review of the evidence shows that Ms. Soulsby simply requested one-half of his retirement or $344.00 per month (i.e., one-half of his monthly benefits) and that this amount would constitute her spousal support. *Page 10 
 {¶ 18} Specifically, when questioned by her counsel about spousal support, she testified:
 Q: In order to supplement your income, would you like to have an order to his retirement to receive half of his retirement or three hundred and forty-four dollars ($344.00) per month?
 A: Yes.
 Q: In the documents I prepared, I've added an additional hundred and fifty ($150.00) on that. I [sic] that more than you're really asking for?
 A: I can do without the hundred and fifty ($150.00), if they would just let me have the three forty-four ($344.00). I could get by.
 Q: And would you like to have that forwarded to you by a q-dro or a court order so that it came regularly rather than through these payments that we filed a contempt on?
 A. Yes. I would rather . . . Because it goes right into his checking account the first day of every month. His social security goes in on the third day of every month. * * *
 Q. So, you would like to have half of his retirement through a q-dro is what you would like to have as spousal support?
 A. Yes.
 Q. Is that correct?
 A. Yes.
 Counsel: So I'm clear, was that question that's what she wants as spousal support half of his retirement?
 Counsel: Yeah.
 Counsel: Okay.
 Counsel: So, my additional amount that I asked for she does not want.
 Counsel: Okay. Alright. *Page 11 
 Later, during cross-examination, Ms. Soulsby testified:
 Q. And just so I'm clear, your request for the Court is that you receive spousal support in the form of one half of his retirement?
 A. Yes.
 {¶ 19} Moreover, in her proposed findings of fact and conclusions of law, Ms. Soulsby did not list Mr. Soulsby's retirement benefits as marital property to be divided under R.C. 3105.171. Rather, she addressed the issue of his retirement under the section dealing with spousal support, specifically recommending the following:
 Spousal Support: * * * Defendant has a retirement from his former employer paying $688 to him monthly and he receives an additional $1,230 monthly from Social Security. Plaintiff has $637 monthly from Social Security. See Exhibit K. Plaintiff is entitled to an award of one-half (1/2) of Defendant's retirement, and this will constitute her support under O.R.C. § 3105.18. Plaintiffs counsel shall prepare a QDRO to implement the payment of the aforesaid fifty percent (50%) share of Defendant's retirement. The Court should not retain continuing jurisdiction of the spousal support issue. [Emphasis added.]
 {¶ 20} Concerning the source and method of payment, Ms. Soulsby recommended:
 that Plaintiff shall retain her Social Security benefits and fifty percent (50%) of Defendant's retirement benefits (currently $688 monthly) through his former employer. Plaintiff's counsel shall prepare a QDRO which will divide the aforesaid monthly benefit payments equally, and a copy of the QDRO shall be filed with the Court and provided to Defendant's former employer. This Court's temporary spousal support order shall remain in effect until Plaintiff receives her first payment under the QDRO, at which time Defendant will no longer be required to pay the $300 monthly spousal support; *Page 12 
 {¶ 21} Thus, she specifically requested that one-half of his retirement benefits would constitute her spousal support under R.C.3105.18. Her proposed method of payment reflected her desire to have the spousal support payment taken from his retirement account via QDRO.
 {¶ 22} Ms. Soulsby cannot complain on appeal about the source of spousal payment she advocated. Because she proposed this distribution, even if this method was in error, she cannot take advantage of error which she induced. See Gerlach v. Gerlach, 10th Dist. Nos. 03AP-22 and 03PA-872, 2004-Ohio-1607, at ¶¶ 37-38, (refusing to allow appellant to take advantage of alleged error in the trial court's distribution of assets and liabilities he advocated), citing Young v. Young (Dec. 29, 1993), Lorain App. No. 93CA005554 (refusing to address merits of alleged error where appellant induced error); Crock v. Crock (Mar. 29, 1991), Noble App. No. 202 (applying invited error doctrine to mistaken value of property).
 {¶ 23} Furthermore, the trial court did not abuse its discretion in awarding Ms. Soulsby only $250.00 per month as spousal support and not $344.00 as requested. In determining the amount of spousal support, the trial court applied the evidence to the factors set forth in R.C.3105.18(C)(1). The trial court found that Ms. Soulsby has a monthly income of $637.00 from social security disability and that Mr. Soulsby has a total monthly income of $1,918.00 (i.e., $1230.00 in social security and $688.00 in retirement benefits). The trial court also found that the parties, while living in separate households since 2004, have maintained essentially the same standard of living prior to their separation. Finally, the trial *Page 13 
court found that at the time of the parties' separation, Ms. Soulsby had approximately $50,000 to $55,000 she had inherited from her uncle. While not marital property subject to division, the trial court properly considered it as an asset of Ms. Soulsby under R.C. 3105.18(C)(1)(i). Thus, the award complies with the "appropriate and reasonable" standard under R.C. 3105.18.
 {¶ 24} Based on the totality of the facts and circumstances of the case, we cannot say the trial court acted unreasonable or arbitrary in its division of the marital property and in awarding Ms. Soulsby $250.00 per month in spousal support from Mr. Soulsby's retirement. Accordingly, we overrule Ms. Soulsby's first assignment of error.
 V. The Parties' Florida Mobile Home {¶ 25} In her second assignment of error, Ms. Soulsby contends that the trial court erred in finding that she owed Mr. Soulsby $4,500 from the pre-divorce sale of the parties' Florida mobile home. She contends that the trial court erred in finding the proceeds to be marital property because she sold the mobile home prior to filing this action; thus it did not exist as an asset subject to division. She argues that the trial court's use of the date of separation as the de facto termination date was simply an effort to circumvent the fact that the mobile home was not available for marital property division on the date she filed the second complaint. She also contends that the trial court abused its discretion in not allowing her to keep the proceeds because she sold the mobile home to reimburse herself for spousal support payments Mr. Soulsby owed her under a *Page 14 
court order from the previously dismissed divorce action and for certain utility bills.
 {¶ 26} Trial courts possess broad discretion in choosing the appropriate marriage termination date for purposes of property valuation. Berish, 69 Ohio St.2d at 319. Thus, we will not disturb the termination of marriage date absent an abuse of discretion. Id.
 {¶ 27} The duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and determining appropriate dates for valuation. Eddy v. Eddy, 4th Dist. No. 01CA20, 2002-Ohio-4345, at ¶ 23, citing Berish, supra. Under R.C.3105.171(A)(2), "during the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court.
 {¶ 28} Thus, trial courts often terminate marriages as of the date of the final hearing. Nevertheless, the Supreme Court of Ohio has acknowledged that equity may occasionally require the trial court to choose a de facto termination of marriage date. Berish,69 Ohio St.2d at 319-320. "The choice of a date as of which assets available for equitable distribution should be identified and valued *Page 15 
must be dictated largely by pragmatic considerations. * * * [T]he precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review." Id.
 {¶ 29} Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities and/or separate bank accounts. Eddy, supra, ¶ 24, citing Gullia v.Gullia (1994), 93 Ohio App.3d 653, 666, 639 N.E.2d 822. Courts should be reluctant to use a de facto termination of marriage date solely because one spouse unilaterally vacates the marital home. Id., citing Day v.Day (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201. Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances. Id.
 {¶ 30} Here, the trial court defined "during the marriage" as the period of time between the date the parties married, October 16, 1986, and the date they began living separate and apart, May 1, 2004. Thus, the trial court chose May 1, 2004, as the de facto termination date of the marriage. The record supports the use of this date because the parties separated in April 2004, they made no attempt at reconciliation, and they maintained separate residences after that date. Ms. Soulsby testified that in March 2005, after the parties separated but prior to filing this divorce action, she sold their Florida mobile home and its *Page 16 
furnishings, retained all of the proceeds and admitted that she did so without consent or inquiry from Mr. Soulsby. In determining the de facto termination date of the marriage, the trial court specifically found that it would be inequitable for the proceeds from the sale not to be considered marital property. The trial court did not abuse its discretion in choosing May 1, 2004, as the de facto termination of marriage date because a reasonable fact finder reviewing the totality of the circumstances would be justified in using this date.
 {¶ 31} After determining the term of the marriage and before the trial court reaches the stage of distributing property, it must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). This determination is a factual inquiry and is reviewed under a manifest weight of the evidence standard. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989. We will not reverse a trial court's judgment so long as it is supported by some competent, credible evidence going to all of the essential elements of the case. Sec. Pacific Natl. Bank v. Roulette
(1986), 24 Ohio St.3d 17, 20, 492 N.E.2d 438. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. We are guided by the presumption that the trial court's factual findings are correct since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. In re Jane Doe I,57 Ohio St.3d at 138.
 {¶ 32} Marital property includes all real property that currently is owned by either or both of the spouses and that was acquired by either or both of the *Page 17 
spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Therefore, property acquired during the marriage is presumed to be marital in nature unless it is shown to be separate.
 {¶ 33} The evidence showed that during their marriage the parties purchased the Florida mobile home and its furnishings for $9,000.00 and $1,000.00, respectively. Ms. Soulsby testified that they paid for the property out of a marital account and that the mobile home was titled in both of their names. Ms. Soulsby also testified that she sold the property in March 2005. Based on the foregoing, we find that the trial court's determination that the mobile home constituted marital property as of the de facto termination date was supported by some competent, credible evidence and is not against the manifest weight of the evidence.
 {¶ 34} Finally, Ms. Soulsby contends that the trial court abused its discretion by refusing to allow her to keep all of the proceeds. However, marital property should be divided equally unless such an equal division would produce an inequitable result. R.C. 3105.171(C); See, also, Holcomb, 44 Ohio St.3d at 132. Ms. Soulsby sold the Florida mobile and its furnishings for $9,000. She spent $4,500 to add a walk-in closet to the mobile home on the Pomeroy Pike property, where she resided, and then retained Mr. Soulsby's half to reimburse herself for debt obligations she claimed Mr. Soulsby owed her. She admits that she did so during the course of the previously filed divorce action without his consent or input. Also, she testified that there was no money owed on the property and that she sold the property without first getting an appraisal. Mr. *Page 18 
Soulsby testified that he did not believe that $9,000.00 was a fair value. In awarding Mr. Soulsby a lien against the Pomeroy Pike property ($4,500.00 of which represented his share of the sale proceeds), the trial court essentially split the proceeds equally. Even if Mr. Soulsby owed her money as she now claims, she sold the marital property without his knowledge or consent while the previous divorce action, which she later voluntarily dismissed, was pending and for a price that may have been less than a fair market value. Based on the totality of the circumstances, we cannot say that the trial court's division of the proceeds produced an inequitable result. We overrule Ms. Soulsby's second assignment of error.
 {¶ 35} Therefore, we affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 19 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J McFarland, J.: Concur in Judgment and Opinion.
[1] In her Brief, Ms. Soulsby cites to page 79 of the trial transcript in support of her contention that at the time of his retirement Mr. Soulsby had taken a survivorship benefit from his retirement which would have been payable to Ms. Soulsby. However, our review of the transcript page does not support this contention, and we cannot find any evidence in the record to otherwise support this claim. *Page 1