DECISION AND JUDGMENT ENTRY
{¶ 1} Bessie R. Elliott ("Bessie") appeals the judgment entry of the Ross County Court of Common Pleas allocating the parties' marital debt. Bessie argues that the trial court's division of the debt was not equal or equitable as it required her to pay approximately $24,000 of unsecured marital debt while only requiring her former husband, Beryl E. Elliott ("Beryl"), to pay approximately $2,300 of similar debt. Because the trial court's findings of fact do not support its judgment, we sustain Bessie's assignment of error. Therefore, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 I. {¶ 2} Bessie and Beryl married in 1968. On August 30, 1999, Bessie filed a complaint for divorce. In response, Beryl filed an answer seeking dismissal of Bessie's complaint. He also included a cross-complaint for divorce.
 {¶ 3} On November 10, 1999, a magistrate conducted a hearing to consider the question of temporary spousal support and the allocation of the parties' marital debts. Following the hearing, the magistrate issued a decision ordering Beryl to pay $50 per week in temporary spousal support and to pay the $641.99 monthly mortgage on the Clinton Road residence where Bessie continued to reside. The magistrate also ordered Bessie to pay the "Lazarus, Penney's, MasterCard, VISA, First Card, Sears, Chase and Elder-Beerman debts during the pendency of this action" and ordered Beryl to pay the "Bank One VISA, Associate's VISA, Mellon Bank VISA, Dr. Chen, and all mortgages owed on the rental properties during the pendency of this action."
 {¶ 4} In December 2000, the trial court entered a decree of divorce, in which the trial court adopted the parties' partial agreement regarding the division of marital property. The only remaining issues were the division of the remaining marital property and the allocation of marital debt.
 {¶ 5} In June 2001, the magistrate issued a decision dividing the remainder of the marital property and the marital debts. The magistrate made findings of fact, including a valuation of Westside Ceramic, a sole proprietorship owned by Beryl. Additionally, the magistrate attributed Beryl's account at Oak Hill Bank to the value of marital property rather than to the value of Westside Ceramic. The magistrate also ordered the parties to pay the debts as previously ordered.
 {¶ 6} Both parties filed objections to the magistrate's decision. Beryl objected to the valuation of Westside Ceramic, but not to the classification of the Oak Hill Bank account as marital property. Bessie argue, among other things, that the allocation of the debts was not equal or equitable as required by R.C. 3105.171 because the proceeds from the sale of the parties' real estate had been used to pay off the "Dr. Chen" debt that Beryl had been ordered to pay. [1]
 {¶ 7} In March 2002, the trial court overruled the parties' objections to the magistrate's decision.[2] Both parties appealed. See Ross App. Nos. 02CA2655 and 02CA2656. Beryl raised two assignments of error, challenging the trial court's valuation of Westside Ceramic, and the trial court's classification of his Oak Hill Bank account as marital property. Bessie's sole assignment of error was that the trial court abused its discretion as its allocation of marital debt was neither equal nor equitable.
 {¶ 8} On appeal, we conlcuded that the trial court did not abuse its discretion in believing the testimony of one expert over the other in valuing Westside Ceramic, and that Beryl had waived his argument regarding the classification of his Oak Hill Bank account because he did not object to the magistrate's finding. With regard to Bessie's cross-appeal, we concluded that the trial court did not support its conclusion regarding the marital debt with adequate written findings of fact as required by R.C. 3105.171. Accordingly, we affirmed in part and reversed in part the judgment of the trial court and remanded the matter for further proceedings consistent with our opinion.
 {¶ 9} Upon remand, the magistrate issued a decision containing findings of fact to support the division of marital debt, which the trial court approved and adopted. The essence of the trial court's findings of fact was that: 1) Beryl paid Bessie temporary spousal support of $50 per week; 2) Beryl paid the $641.99 monthly mortgage payment on the marital residence, which Bessie occupied during the pendency of the action; 3) Beryl paid the mortgages on the parties' rental properties during the pendency of the action, and Bessie received a portion of the rental income; 4) The "Dr. Chen" debt that Beryl was to pay pursuant to the temporary orders was associated with the parties' real property, making it equitable to pay the debt from the proceeds of the sale of the real property; 5) Bessie established the accounts the court ordered her to pay; 6) Bessie received a significant amount of cash for her share of the business retained by Beryl; and, 7) Bessie received the greater amount of the cash sale proceeds.
 {¶ 10} Bessie timely filed objections to the magistrate's decision. On August 18, 2003, the trial court issued a journal entry, overruling Bessie's objections and adopting the magistrate's decision as it's order.
 {¶ 11} Bessie appeals, raising the following assignment of error: "The trial court's allocation of marital debt was neither equal nor equitable and was therefore an abuse of discretion."
 II. {¶ 12} In a divorce proceeding, a trial court enjoys broad discretion in crafting an equitable division of marital property. R.C. 3105.171(C)(1); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Worthington v. Worthington (1986), 21 Ohio St.3d 73,76; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295;Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. Despite the trial court's broad discretion, Ohio law requires the court to divide marital and separate property equitably between the parties. R.C. 3105.171(B). In most cases, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). However, if an equal division would produce an inequitable result, the court must divide the property in a way that the court determines to be equitable. Id. Because the court must consider both assets and liabilities, an equitable division of marital property necessarily implicates an equitable division of marital debt. R.C. 3105.171(F)(2).
 {¶ 13} We will not reverse a trial court's allocation of marital property and debt absent an abuse of discretion.Holcomb at 131. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable. Masters v. Masters
(1994), 69 Ohio St.3d 83, 85; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying this standard of review, we may not freely substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, 137-138;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169. Instead, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the parties' marital assets and liabilities. Briganti v. Briganti (1984),9 Ohio St.3d 220, 222.
 {¶ 14} Bessie concedes that the trial court equitably divided the marital property. However, she argues that the trial court's division of the marital debt was far from equitable, noting that the trial court's order required her to pay approximately $24,000 in debt, while only requiring Beryl to pay approximately $2,300. Bessie argues that the trial court required her to continue paying all of the unsecured debt that it previously ordered her to pay in its temporary orders. Yet, the secured debt that the court required Beryl to pay in the temporary orders was paid in full by the proceeds from the sale of the marital real estate. Bessie contends that the "small amount of spousal support" and payments Beryl made on the parties' real estate during the pendency of the divorce were more than offset by the income Beryl collected from the rental properties.
 {¶ 15} Beryl argues that the trial court correctly allocated the marital debt, based upon the magistrate's findings. Beryl emphasizes that Bessie established the charge accounts she was ordered to pay, and that she had opened the two National City accounts without his knowledge or authorization. As a result, Beryl implies that the debt the trial court ordered Bessie to pay was separate, rather than marital, debt.
 {¶ 16} In a divorce proceeding, the trial court must identify the property and debt as marital or separate and divide the property and debt equitably between the parties. R.C. 3105.171. However, R.C. 3105.171 does not define what constitutes marital debt of the parties. Nor does it require that the court order the debt paid only by the party who incurred the debt. See Dotson v.Henry (Dec. 29, 1992), Washington App. No. 91CA21. As the Seventh Appellate District recently noted, "[n]o accepted definition of marital debt has arisen from Ohio caselaw. In most states, a marital debt is any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. Turner, Equitable Distribution of Property (2 Ed. 1994, Supp. 2002) 455, Section 6.29." Ketchum v. Ketchum, Columbiana App. No. 2001 CO 60, 2003-Ohio-2559, at ¶ 47.
 {¶ 17} Here, the trial court appears to have concluded that the credit card debt it ordered Bessie to pay was separate in nature, given the court's finding that she "established the accounts she was ordered to pay." However, evidence that one spouse established the accounts, or that the accounts were held solely in one spouses name does not preclude a finding that the debt incurred on such accounts is marital debt. See, e.g.,Guenther v. Guenther, Butler App. No. CA2001-04-072, 2002-Ohio-376; Rupert v. Rupert, (Dec. 22, 2000), Mercer App. No. 10-2000-13, 2000 WL 1929874.
 {¶ 18} There is little evidence before this court as to when the parties opened the accounts in question, other than Bessie's testimony that the Lazarus account was opened near the time of the marriage, and that she made Beryl aware of each of the accounts before she opened them. Nor is there any evidence before this court, other than the one word summaries in Bessie's initial financial disclosure affidavit, tending to prove what the disputed credit card accounts were used for.
 {¶ 19} As the party seeking to have the trial court find the debt to be Bessie's separate property, Beryl had the burden of proof. Gibson v. Gibson (Mar. 29, 1996), Clark App. No. 95-CA-87, 1996 WL 139780, at 6. There is noting in the record before us to indicate that Beryl offered any evidence that the credit card debt assigned to Bessie was her separate obligation. Without evidence that Bessie used the credit cards only for her benefit, the trial court could not have found that the entire $24,000 debt was hers alone. Moreover, although the trial court found other factors to be relevant to its determination, the court was obligated first to determine the nature of the debt, i.e., whether it was marital or separate, before allocating it. There simply is no logical manner in which the court could create an equitable distribution if the facts underlying it are incorrect or inaccurate.
 {¶ 20} Pursuant to the foregoing analysis, Bessie's sole assignment of error has merit. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Dissents.
[1] The record reflects that the "Dr. Chen" debt consisted of a mortgage on property owned by the parties.
[2] By a separate entry dated March 28, 2002, the trial court found that, by agreement of the parties, the "Dr. Chen" debt was to be paid from the proceeds of the sale of the parties' real estate. Accordingly, the trial court vacated the portion of its March 1, 2002 judgment entry ordering Beryl to pay the "Dr Chen" debt.