OPINION
{¶ 1} Plaintiff-appellant, Michael Crissinger, appeals from a Harrison County Common Pleas Court, Domestic Relations Division decision granting him a divorce from defendant-appellee, Christine Crissinger, and ordering him to pay spousal support and attorney fees.
 {¶ 2} The parties were married on November 15, 1969. In September 1998, appellee left appellant and began cohabitating with Sally Ronald.
 {¶ 3} Appellant filed a complaint for divorce on July 8, 2003 and appellee filed a counterclaim on July 31. The matter proceeded to trial where the main issues were spousal support and appellant's military pension.
 {¶ 4} The trial court determined that appellee is entitled to 42 percent of appellant's military retirement pay. It also determined that appellant is to pay appellee spousal support of $400 per month until appellee reaches age 62. At that time, support payments are to be reduced to $300 per month until appellee attains age 65 at which time spousal support will terminate. Finally, the court determined that appellant would pay appellee's attorney fees in the amount of $1,800 and litigation expenses. The court designated these expenses as additional spousal support.
 {¶ 5} Appellant filed a timely notice of appeal on June 9, 2005.
 {¶ 6} Appellant raises three assignments of error, the first of which states;
 {¶ 7} "THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT TO THE DEFENDANT, CHRISTINE CRISSINGER."
 {¶ 8} Appellant argues that the trial court erred in awarding appellee spousal support. He bases this argument on the fact that appellee has been involved in a cohabitating relationship with Sally Ronald for many years. Appellant argues that the cohabitation of an obligee spouse with another person, male or female, generally terminates a spousal support obligation. He notes that the trial court found that appellee and Ronald share a life together, which includes financial as well as other matters. Thus, appellant concludes that his financial obligation has been, in essence, assumed by Ronald.
 {¶ 9} Additionally, appellant argues that appellee's relationship with Ronald is akin to marriage. Appellant asks us to extend the Ohio Supreme Court's holding in Dunaway v.Dunaway (1990), 53 Ohio St.3d 227, 560 N.E.2d 171, to the present set of facts. In Dunaway, the Court held: "Where a dependent divorced spouse remarries, the obligation of the first spouse to pay sustenance alimony terminates as a matter of law unless: (1) the sustenance alimony constitutes a property settlement, (2) the payment is related to child support, or (3) the parties have executed a separation agreement in contemplation of divorce that expressly provides for the continuation of sustenance alimony after the dependent party remarries." Id. at the syllabus. Appellant asserts that because appellee is essentially remarried, his spousal support obligation should be terminated as a matter of law.
 {¶ 10} We review matters surrounding spousal support decisions for an abuse of discretion. Corradi v. Corradi, 7th Dist. No. 01-CA-22, 2002-Ohio-3011, at ¶ 51. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} Regarding cohabitation as a factor in determining whether to award spousal support, this court has stated:
 {¶ 12} "A finding of cohabitation can have a direct impact on a spousal support award. Trial courts have the power to terminate or reduce an award of spousal support based on cohabitation.Moell v. Moell (1994), 98 Ohio App.3d 748, 649 N.E.2d 880. While R.C. 3105.18(C) lists a number of factors for a trial court to consider when determining spousal support, cohabitation is not expressly listed as a factor. However, R.C. 3105.18(C)(1)(n) states that any other factor that the trial court expressly finds to be relevant and equitable can be used to determine spousal support. Furthermore, if cohabitation after a divorce decree is grounds for modification or termination of spousal support, then cohabitation during the pendency of the divorce should logically be a factor to bar an original award of support." Bernard v.Bernard, 7th Dist. No. 00-CO-25, 53 Ohio St.3d 227.
 {¶ 13} In this case, the trial court found that appellee cohabitates with Ronald and its findings support that conclusion. To find that two people are cohabitating, the court must find (1) that the two are actually living together, (2) for a sustained duration, and (3) that they share expenses with respect to financing and day-to-day incidental expenses. Id.
 {¶ 14} In its judgment entry, the court found that appellee has been living with Ronald since 1998. It found that appellee and Ronald share a household and all household and transportation expenses. The court also found that they have a "deep and soulful relationship together and appear to be interdependent upon each other" and that for all practical purposes they are a "couple." Thus, its findings support its conclusion of cohabitation.
 {¶ 15} Appellant asks us to extend the Dunaway bar to spousal support to situations where the obligee spouse enters into a cohabitating arrangement that is analogous to marriage. However, the enactment of R.C. 3105.18(E) in 1991 has largely nullified the terms of Dunaway. Lewis v. Surface, 2d Dist. No. 02CA71, 2002-Ohio-7287, at ¶ 20. The Dunaway Court based its decision on public-policy principles, because at the time of that decision, statutory law was silent as to when a trial court had jurisdiction to modify a spousal support award. Kimble v.Kimble, 97 Ohio St.3d 424, 780 N.E.2d 273, 2002-Ohio-6667, at ¶9. The Court has since determined that we can no longer rely on the policy set forth in Dunaway because it conflicts with and is superseded by statute. Id. "Instead of permitting spousal support to continue after remarriage only if the parties have expressly agreed that it would, R.C. 3105.18(E) prohibits termination of spousal support on account of remarriage absent the specific agreed authorization which that section requires."Lewis, 2d Dist. No. 02CA71, at ¶ 20.
 {¶ 16} Furthermore, this court has previously ruled that the fact that an ex-spouse cohabitates with another person does not automatically bar an award of spousal support. In Patsey v.Patsey (Dec. 16, 1998), 7th Dist. No. 96 CO 52, the husband made almost the identical argument as appellant now makes. The only difference between the two cases is that in Patsey, the wife was cohabitating with a man whereas in this case, appellee is cohabitating with a woman. The husband in Patsey argued that the trial court abused its discretion in awarding the wife spousal support given that she cohabitated with an unrelated male for over a year after the parties separated and shared living expenses with the unrelated male. He further argued that while the wife and her paramour were not legally married, they shared all the same elements of their personal and economic relationship that married couples share.
 {¶ 17} The husband also relied on Vaughan v. Vaughan (June 14, 1995), 5th Dist. No. CT94-22, where the Fifth District determined, "[i]f cohabitation after a divorce decree is grounds for modification or termination of spousal support, then cohabitation during the pendency of the divorce should likewise bar an original award of support." In Vaughan, the court was unsure however whether the trial court intended the spousal support to be a part of the parties' property settlement. Therefore, the court vacated the spousal support award and the division of property and remanded the case for further consideration.
 {¶ 18} After considering the husband's arguments in Patsey,
we concluded that cohabitation during the pendency of divorce was not necessarily a bar to an award of spousal support. In reaching this conclusion, we reasoned:
 {¶ 19} "In the instant case, the trial court specifically stated that it considered appellee's current status of cohabitation and made proper adjustments in the amount of spousal support which it awarded to appellee. The trial court also specifically considered appellant's ability to pay, including therewith his obligation to make monthly payments to appellee for her interest in his pension benefits. The trial court offered that it considered all other factors set forth in R.C. 3105.18 in making its spousal support award to appellee. The trial court further stated that it would not retain jurisdiction to modify its award and found that same was subject to termination only upon either party dying or upon remarriage. In light of the trial court's thoroughness in its explanation and compliance with the statutory factors, it cannot be viewed that an abuse of discretion occurred regarding the grant of spousal support to appellee." Patsey, 7th Dist. No. 96 CO 52.
 {¶ 20} The facts of the present case are similar to those ofPatsey. In this case too, the trial court considered all of the R.C. 3105.18(C)(1) factors in reaching its decision. The court devoted three pages of its judgment entry to analyzing each of the thirteen factors as applied to the parties. The court then stated that, pursuant to R.C. 3105.18(C)(1)(n), which allows it to consider any other factor it finds to be relevant and equitable, it had to consider two other factors: (1) appellee's health insurance situation and (2) appellee's relationship with Ronald.
 {¶ 21} Regarding health insurance, the court noted that throughout the marriage, appellee relied on appellant's employment for health insurance. It further found that based on appellee's employment history, it was unlikely that she will be able to secure insurance through her own employment. However, appellant will be able to continue his insurance through his military retirement. The court found that given appellee's medical history and requirements, she requires hearing aids and is on maintenance medication to control her bipolar disorder, it is imperative that she maintain access to health insurance.
 {¶ 22} Regarding appellee's relationship with Ronald, as stated above, the court found that the two are cohabitating.
 {¶ 23} The court then went on for five paragraphs discussing whether appellee was entitled to spousal support. It noted that several factors weighed against awarding her any support: (1) she receives monthly income from appellant's military pension; (2) she does not work full time; and (3) she has a psychological, emotional, and financial relationship with Ronald. It then noted that several factors weighed in favor of awarding support: (1) the marriage was of exceptional duration (approximately 30 years) and appellee spent a considerable part of her marriage as a homemaker; (2) appellee has a lower income than appellant; (3) appellee has significantly less earning ability than appellant; (4) appellee receives less money from the military retirement than appellant; (5) appellee suffers from bipolar disorder, a chronic condition which can be disabling in the absence of regular medication; and (6) appellee faces substantially higher health insurance costs than appellant.
 {¶ 24} Additionally, the court noted that both parties expected that appellee would be able to utilize appellant's insurance available through the military retirement because they made no other provision. Therefore, the court found that it was appropriate to require appellant to share in the cost of providing appellee's health insurance until she is eligible for Medicare.
 {¶ 25} Finally, the court determined that appellee should not be punished for her relationship with Ronald. It noted that given the level of appellee's income, it made sense for her to share household expenses with another person. However, the court found that it was not appropriate to require appellant to provide spousal support to appellee to the same degree as if appellee had not established a supportive relationship with Ronald.
 {¶ 26} Based on all of these factors, the court concluded that spousal support of $400 per month was reasonable until appellee reaches age 62 and becomes eligible for social security benefits. Spousal support will then be reduced to $300 per month until appellee reaches age 65 and becomes eligible for Medicare. At the time of the divorce decree, appellee was 54 years old. Thus, the support award was for approximately 11 years.
 {¶ 27} The court spent a great deal of time considering appellee's relationship with Ronald and how it affected the support award. It also considered all of the statutory factors in reaching its decision. Furthermore, the court stated that although appellee was entitled to some spousal support, the award was not as large as it would have been had she not been cohabitating with Ronald. Given the court's thorough reasoning and analysis, we cannot conclude that it abused its discretion in awarding appellee spousal support. Furthermore, since Dunaway
was superseded by statute, re-marriage no longer automatically terminates spousal support as a matter of law absent a specific authorization. Thus, it follows that living in a marriage-like, cohabitating relationship does not terminate spousal support as a matter of law either. Thus, appellant's first assignment of error is without merit.
 {¶ 28} Appellant's second assignment of error states:
 {¶ 29} "THE TRIAL COURT ERRED BY REQUIRING THE HUSBAND TO PAY AN AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES ON BEHALF OF THE WIFE AS ADDITIONAL SPOUSAL SUPPORT."
 {¶ 30} Here appellant argues that the trial court should not have required him to pay appellee's attorney fees and litigation expenses. He bases his entire argument on his assertion that he should not have to pay spousal support. The trial court stated that appellant was required to pay appellee's attorney fees and litigation expenses "as spousal support." Appellant contends that, based on his argument in his first assignment of error that he should not have to pay spousal support, he should likewise not be required to pay appellee's attorney fees and expenses.
 {¶ 31} Appellant specifically states in his brief that he is not disputing the reasonableness of the fees or expenses. His argument is based solely on his argument in his first assignment of error — that he should not be required to pay spousal support. The trial court's award of spousal support was reasonable. Therefore, appellant's second assignment of error also is without merit.
 {¶ 32} Appellant's third assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED BY FINDING THAT THE PERIOD OF THE MARRIAGE BETWEEN THE PARTIES WAS FROM NOVEMBER 16, 1969 THROUGH JULY 31, 2003, THE DATE OF THE WIFE/APPELLEE'S COUNTERCLAIM."
 {¶ 34} Appellant claims that the trial court erred in setting the end date of the marriage as July 31, 2003. He points out that appellee began cohabitating with Ronald in 1998 and has continued to do so. Furthermore, he notes that the trial court's findings indicate that the parties separated in 1998 when appellee moved in with Ronald. Thus, he argues that the end date of the marriage should be the date appellee began living with Ronald.
 {¶ 35} The trial court did err in setting the end date of the marriage. The court stated that the end date of the marriage was July 31, 2003, the day appellee filed her counterclaim for divorce. However, the court's findings do not support this conclusion. The court found that the parties separated and appellee began living with Ronald in September 1998. Additionally, the court found that the parties were together almost 29 years (1969 through 1998) before separating. The court also noted that the parties did not file for divorce until five years after their separation.
 {¶ 36} Given these findings, the end date of the marriage was sometime in September 1998. However, changing the end date of the marriage does not affect the court's judgment entry. The only two areas it seems that the end date of the marriage would affect are spousal support and the division of appellant's military pension. There were no debts to divide or other assets to divide that would require a determination of the end date of the marriage.
 {¶ 37} As to spousal support, the court found that the parties were together for almost 29 years. To reach this conclusion the court would have had to determine that they separated in 1998. Thus, the court considered the proper end date of the marriage when determining whether spousal support was reasonable.
 {¶ 38} As to appellant's military pension, appellant was on active duty from 1966 to 1987. Thus, all but the first three years of the pension appellant earned, he earned during the course of the marriage, making 17 years of the pension marital property. It does not matter whether the parties separated in 1998 or in 2003. Either way, the same portion of the military pension is marital property.
 {¶ 39} Thus, although appellant's third assignment of error has merit, it is non-prejudicial error and therefore it does not require a reversal of the court's judgment.
 {¶ 40} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.