DECISION AND JUDGMENT ENTRY
{¶ 1} John M. Downs appeals the judgment in this divorce action, contending that the distribution of marital debt and the award of spousal support are unjustified. The court awarded Mr. Downs both marital residential properties, but gave Ms. Downs one-half the equity in the marital residence. It also ordered Mr. Downs to assume the mortgages on both properties and to pay a loan he obtained for the benefit of his daughter from a prior marriage.
 {¶ 2} Mr. Downs argues that the trial court abused its discretion in ordering him to assume all of these three debts. However, the trial court awarded him both residences purchased during the marriage. Furthermore, Mr. Downs's daughter from a previous marriage lives in the second residence and has been making the mortgage payments. She has also been paying the loan taken out for her benefit. We do not believe that the trial court abused its discretion in requiring Mr. Downs to assume *Page 2 
responsibility for these debts when he has retained the marital assets related to those debts and when the loan was for the benefit of his daughter from a previous marriage.
 {¶ 3} Second, Mr. Downs argues that the trial court abused its discretion in awarding spousal support to Ms. Downs for a twenty-four month period when the evidence shows that she was cohabitating with a paramour at the time. However, some competent, credible evidence supports the trial court's finding that Ms. Downs was not cohabitating. While not denying that she frequently spent the night with her friend, Ms. Downs denied she had "moved in." She testified she kept her possessions at her mother's home and received her mail there. Likewise, she did not contribute financially to her friend or receive any financial support from him. Thus, we cannot say that the trial court abused its discretion in awarding spousal support. Accordingly, we affirm the judgment below.
 I. Facts {¶ 4} John M. Downs and Teresa J. Downs separated on July 1, 2004, and sought a divorce from each other. They did not have any children together, although each had children from prior relationships. They owned two pieces of real property, the marital residence and a second residence that the parties bought to provide a home for Mr. Downs's son. Although Mr. Downs's son had been making the mortgage payments, he fell behind and the bank foreclosed on the house. Mr. Downs and Ms. Downs paid to reinstate the mortgage, and Mr. Downs's daughter now resides in the second residence and pays the mortgage on that property. The marital residence has a fair-market value of $79,000 and is encumbered by a mortgage in the amount of $16,647.75. The second residence is encumbered by a mortgage in the amount of $98, *Page 3 
295.60. Mr. Downs and Ms. Downs also obtained a loan in the amount of $10,000 in order to help Mr. Downs's daughter's bookstore stay open. His daughter makes the payments due on this loan, on which Mr. Downs and Ms. Downs still owe $7,788.07. Ms. Downs has a loan in her own name that consolidated some debts incurred during the marriage.
 {¶ 5} After Mr. Downs petitioned for divorce, he sought and received an order from the trial court for Ms. Downs to vacate the marital residence, where Mr. Downs continued to reside. Ms. Downs testified that, during the course of the divorce proceeding, she resided with family members and received spousal support from Mr. Downs. However, Mr. Downs hired a private investigator who testified that Ms. Downs stayed with a man named Donald Buskirk on the nights the investigator followed her. Several days a week over a two-to three-week period, the investigator observed Ms. Downs entering Buskirk's residence without knocking, and he testified that, although Ms. Downs had not brought a change of clothes, she left for work the following days in fresh clothing. Ms. Downs testified that she lived with her mother and her daughter during the divorce proceedings. She admitted having a romantic relationship with Buskirk and spending the night with him, but she testified that she had never moved in with him, had mail delivered to his house, or given him money for "utilities or anything else." Instead, she explained that it was a coincidence that on the nights the investigator followed her she had spent the night at Buskirk's. Ms. Downs testified that she kept her possessions at her mother's house during the time she dated Buskirk. In its decision, the Magistrate found that Ms. Downs had been living with relatives during the divorce proceedings. *Page 4 
 {¶ 6} The trial court adopted the Magistrate's Decision over Mr. Downs's objections. In its divorce decree, the trial court awarded Mr. Downs both residences and ordered him to assume both mortgages on those properties. It also ordered Mr. Downs to assume the loan taken out to help his daughter. The trial court reasoned that the mortgage on the second residence and the loan were taken out to benefit Mr. Downs's children and that this debt did not benefit Ms. Downs in any way. Further, the trial court explained that this order was equitable because Mr. Downs's children, rather than Mr. Downs, were the ones paying these two debts. The trial court awarded each of the parties their individual automobile, and it ordered Ms. Downs to pay her consolidation loan and her individual credit card debt. Finally, the trial court awarded each of the parties a one-half share of the equity in the marital home. Mr. Downs filed this appeal.
 II. Assignments of Error {¶ 7} Mr. Downs presents two assignments of error:
 1. "The Court of Common Pleas abused its discretion in apportioning marital assets and debts by requiring Appellant to pay all of the marital debt. (Judgment Entry dated 10/29/07 pgs. 1-3)"
 2. "The lower court abused its discretion in awarding spousal support when the evidence clearly established Appellee was cohabitating at the time and the trial court failed to properly consider the factors enumerated in R.C. 3105.18(C)(1). (Judgment Entry of 10-29-07 pg. 4)"
 III. Standard of Review {¶ 8} A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property and, when appropriate, in awarding spousal support. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140; Soulsby v.Soulsby, Meigs App. No. 07CA1, 2008-Ohio-1019, at ¶ 8; see, also, *Page 5 Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308 ("A trial court is vested with broad discretion when fashioning its division of marital property." (citing Berish v. Berish (1982),69 Ohio St.2d 318, 432 N.E.2d 183)). Although its discretion is not unlimited, it has authority to do what is equitable. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131, 541 N.E.2d 597, citing Cherry v. Cherry (1981),66 Ohio St.2d 348, 355, 421 N.E.2d 1293. We will not reverse a trial court's allocation of marital property absent an abuse of discretion.Holcomb, 44 Ohio St.3d at 131. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219. When applying this standard of review, we may not freely substitute our judgment for that of the trial court.Soulsby at ¶ 8, citing In re Jane Doe I (1991), 57 Ohio St.3d 135,137-38, 566 N.E.2d 1181. Rather, a reviewing court is limited to determining whether, considering the totality of circumstances, the trial court abused its discretion. Briganti v. Briganti (1984),9 Ohio St.3d 220, 222, 459 N.E.2d 896, citing Blakemore,5 Ohio St.3d at 218-20.
 IV. Apportionment of Marital Debt {¶ 9} In his first assignment of error, Mr. Downs argues that the trial court abused its discretion by giving Ms. Downs half of the marital assets while ordering him to assume all of the marital debt. Initially, we note that the trial court did not require Mr. Downs to take on all of the marital debt; the trial court ordered Ms. Downs to pay a consolidation loan and her own credit-card debt. The record reflects that the consolidation loan refinanced several debts incurred during the marriage as well as debts incurred after the parties separated. In any case, Mr. Downs's argument focuses *Page 6 
on three debts: the two mortgages and the bank loan taken out to help his daughter's bookstore stay in business.
 {¶ 10} Marital property should be divided equally unless an equal division would produce an inequitable result. R.C. 3105.171(C);Holcomb, 44 Ohio St.3d at 132. "Because the court must consider both assets and liabilities, an equitable division of marital property necessarily implicates an equitable division of marital debt."Elliott v. Elliott, Ross App. 03CA2737, 2004-Ohio-3625, at ¶ 12, citing R.C. 3105.171(F)(2).
 {¶ 11} Here, the trial court awarded the marital residence to Mr. Downs free and clear of any claim by Ms. Downs, and it awarded her one-half of the equity in the house. Thus, each party received half of the equity in the house. Mr. Downs sought to retain the marital residence as his own, and he obtained an order from the trial court for Ms. Downs to vacate the property and to give Mr. Downs sole possession of it. Thus, we do not believe that the trial court abused its discretion in awarding Mr. Downs the marital residence and the associated debt owed on the residence. See Wolfe v. Wolfe (July 30, 1998), Scioto App. 97CA2526, 1998 WL 472618 ("These are debts secured by the marital residence and, given his testimony that he wanted to keep the residence after the divorce, it is perfectly logical to make him responsible for their payment."); see, also, Galloway v. Khan, Franklin App. No. 06AP-140, 2006-Ohio-6637, at ¶ 25 (holding that the trial court had discretion not to credit the wife for mortgage payments she made on the marital residence when she had exclusive use of it); Motycka v.Motycka, Van Wert App. No. 15-01-02, 2001-Ohio-2162 (holding a division of property to be equitable where the trial court awarded the wife "the marital residence subject to all taxes, *Page 7 
mortgages and assessments owed against the same, free and clear of any claim" by the husband).
 {¶ 12} Similarly, we do not believe that the trial court abused its discretion in awarding Mr. Downs the second residence and ordering him to pay the mortgage securing the payment for the property. Here, Mr. Downs received the property and any equity in it, and the trial court could reasonably require him to assume the mortgage that secured the purchase price of the property.[1] Wolfe, supra. Furthermore, Mr. Downs purchased the property and acquired the debt associated with it in order to provide a home for his son. Mr. Down's daughter now lives there and makes the mortgage payments. For these reasons, we do not believe that the trial court abused its discretion in awarding Mr. Downs the second residence and the mortgage encumbering it.
 {¶ 13} The trial court also left Mr. Downs responsible for the loan he took out to benefit his daughter. The record supports the trial court's finding that this debt was not incurred for Ms. Downs's benefit and was not, therefore, a marital debt. See Elliott at ¶ 16 ("`[A] marital debt is any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" (quoting Ketchum v.Ketchum, Columbiana App. No. 2001 CO 60, 2003-Ohio-2559, at ¶ 47)). Mr. Downs took out this loan and transferred those funds to her daughter to allow her bookstore to stay in business. Furthermore, Mr. Downs's daughter pays the monthly loan payments. We do not believe that the trial court acted unreasonably in ordering Mr. Downs to assume *Page 8 
responsibility for the loan when it was solely for the benefit of his daughter and when his daughter is making the payments.
 {¶ 14} Looking at the totality of the circumstances, we cannot say that the trial court abused its discretion in its division of the marital assets and debts. Accordingly, we overrule Mr. Downs's first assignment of error.
 V. Spousal Support {¶ 15} In his second assignment of error, Mr. Downs argues that the trial court abused its discretion in awarding Ms. Downs spousal support of $400 a month for the twenty-four month period from October 5, 2005, to October 5, 2007, and that it failed to properly consider the statutory factors for awarding spousal support enumerated in R.C. 3105.18(c)(1).
 {¶ 16} R.C. 3105.18(C)(1) provides that, in determining whether spousal support is "appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support," the court must consider the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; *Page 9 
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Neither the Magistrate nor the trial court expressly stated they had considered these statutory factors in determining whether spousal support was reasonable and appropriate. However, Mr. Downs raised and argued each of the statutory factors provided in R.C. 3105.18(C)(1) in his Objections to the Magistrate's Decision. In its order adopting the Magistrate's Decision, the trial court stated that it had considered Mr. Downs's objections. Because Mr. Downs did not request separate findings of fact and conclusions of law, the trial court did not have to list and comment on each factor. Brown v. Brown, Pike App. No. 02CA689, 2003-Ohio-304, at ¶ 10. As we have explained, "[a]bsent a request for findings, we must presume that the trial court considered all the factors in R.C. 3105.18(C)(1)(a)-(n) and all other relevant facts." *Page 10 Mays v. Mays, Ross App. No. 01CA2585, 2001-Ohio-2474, citing Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355, 421 N.E.2d 1293. Thus, the trial court only had to "reveal the basis for its award in either its judgment entry or the record." Brown at ¶ 10; see, also, Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus ("In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.").
 {¶ 17} In any case, Mr. Downs does not specifically argue that the trial court did not consider the statutory factors; instead, he appears to ask this court to reweigh these statutory factors. In particular, he argues that the trial court failed to properly consider the fact that Ms. Downs received half of the marital assets while taking little of the marital debt, that Ms. Downs was voluntarily underemployed, that she had shown no interest in pursuing more education or skills, and that she was cohabitating with another man during the divorce proceedings.
 {¶ 18} As noted above, the trial court could reasonably divide the marital assets and liabilities as it did, as the debts assumed by Mr. Downs alone represented debts secured by and owed on property that he retained and debts incurred for the benefit of his children from a previous marriage. Although the trial court divided Mr. Downs's "Tier II" railroad retirement benefits, he retained all of his "Tier I" railroad retirement benefits. Mr. Downs points to no evidence in the record that Ms. Downs was voluntarily unemployed, but instead relies on the fact that she worked part-time jobs. However, we find no testimony in the record showing that Ms. Downs could have worked full-time or *Page 11 
earned more money but chose not to do so. Furthermore, Mr. Downs himself admits that Ms. Downs "had maintained] steady employment during the marriage" when arguing that she had not lost income because of marital responsibilities. Ms. Downs testified that she would have liked to pursue more education and skills so that she could find a better job, but she and Mr. Downs had decided they could not afford it.
 {¶ 19} Ultimately, the crux of Mr. Downs's argument is that the trial court's finding that Ms. Downs had been residing with relatives rather than cohabitating with her paramour is against the manifest weight of the evidence. Thus, according to Mr. Downs, the trial court should have considered Ms. Downs's cohabitation with another man under R.C. 3105.18(C)(1)(n), which requires the trial court to consider any factor it "expressly finds to be relevant and equitable."
 {¶ 20} The trial court can consider the fact that one spouse has been cohabitating with a person of the opposite sex in determining whether spousal support is reasonable and appropriate. See Leopold v.Leopold, Washington App. No. 04CA14, 2005-Ohio-214, at ¶ 28 (explaining that the trial court has discretion to terminate an award of spousal support in the event the spouse receiving support begins cohabitating with another); see, also, Doody v. Doody, Lake App. No. 2006-L-200,2007-Ohio-2567, at ¶ 55-57 (affirming an award of spousal support where the husband failed to prove that the wife was cohabitating with another); Crissinger v. Crissinger, Harrison App. No. 05-HA-579,2006-Ohio-754, at ¶ 12 (explaining that the trial court may consider cohabitation during the pendency of the divorce as a factor to bar an original award of support). In the legal sense, cohabitation involves more than merely living with or having a sexual relationship with another person. "The purpose of a cohabitation *Page 12 
clause is to prevent inequity in two situations involving spousal support. The first situation occurs when an ex-spouse would receive support from two sources, each of whom is either legally obligated or voluntarily undertakes the duty of total support. * * * The second situation arises when the ex-spouse who is receiving spousal support uses such payments to support a nonrelative member of the opposite sex.'" Leopold at ¶ 28, quoting Moell v. Moell (1994),98 Ohio App.3d 748, 751, 649 N.E.2d 880. Accordingly, "`[c]ohabitation, in the legal sense, * * * implies that "some sort of monetary support is being provided by the new partner or for the new partner."'" Id., quotingMoell, 98 Ohio App.3d at 752, quoting in turn Thomas v. Thomas (1991),76 Ohio App.3d 482, 485, 602 N.E.2d 385. Whether a party has cohabitated with another is a question of fact that must be determined on a case-by-case basis. Id. at ¶ 28, citing Piscione v. Piscione (1992),85 Ohio App.3d 273, 276, 619 N.E.2d 1030.
 {¶ 21} The trial court found that Ms. Downs had stayed with relatives, and it overruled Mr. Downs's objection to spousal support in which he argued that Ms. Downs had cohabitated with Buskirk during the divorce proceedings. Thus, before we determine whether the trial court abused its discretion in awarding spousal support to Ms. Downs, we must determine whether the trial court's finding that Ms. Downs had not been cohabitating with another person is against the manifest weight of the evidence. See Leopold at ¶ 11 ("While the decision to award spousal support is discretionary, an appellate court reviews the factual findings to support that award under a manifest weight of the evidence standard."); see, also, Fletcher v. Fletcher, 68 Ohio St.3d 464, 468,1994-Ohio-434, 628 N.E.2d 1343 ("This court will not reweigh the evidence introduced in a trial court; rather, we will uphold the findings of the trial court when the *Page 13 
record contains some competent evidence to sustain the trial court's conclusions."). We will not reverse a trial court's factual finding on the question of cohabitation if it is supported by some competent, credible evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273; Nemeth v. Nemeth (1997), 117 Ohio App.3d 554,558, 690 N.E.2d 1338; Bussey v. Bussey (1988), 55 Ohio App.3d 117, 119,563 N.E.2d 37.
 {¶ 22} Some competent, credible evidence supports the trial court's finding that Ms. Downs was not cohabitating with Buskirk. Although Mr. Downs presented evidence that Ms. Downs spent several nights a week with Buskirk over a three-week period and that she kept some clothes at his house, there is no evidence in the record showing that Buskirk provided her any financial support or that Ms. Downs helped support Buskirk. Ms. Downs testified that, although she had been "dating" Buskirk, she kept her possessions at her mother's house and she had never "move[d] in" or "resided with" him, had mail delivered to his house, or given him money for "utilities or anything else." Therefore, there is no evidence that Ms. Downs "assumed obligations, including financial support, traditionally associated with marriage." Geitz v. Geitz (May 20, 1999), Jackson App. No. 98CA833, 1999 WL 354517, citing Thomas v. Thomas
(1991), 76 Ohio App.3d 482, 486, 602 N.E.2d 385. Accordingly, we cannot say that that the trial court's findings are against the manifest weight of the evidence.
 {¶ 23} Looking at the totality of the circumstances, we believe that the trial court could reasonably conclude that an award of spousal support was warranted. The parties had been married for 16 years, Mr. Downs earned the greater part of the family income, and Ms. Downs did not receive an equal share of Mr. Downs's retirement *Page 14 
benefits. The record reflects the fact that Mr. Downs had a greater earning potential, and there is no evidence that Ms. Downs was voluntarily underemployed. Finally, it does not appear that Mr. Downs was saddled with an inequitable proportion of the marital debt. Therefore, we overrule Mr. Down's second assignment of error and affirm the judgment below.
 JUDGMENT AFFIRMED. *Page 15 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] The trial court did not place a value on the second residence, and there is no evidence in the record suggesting its value other than the fact that Mr. Downs initially borrowed $100,000 to purchase it. Mr. Downs has not raised, and therefore has forfeited, any error regarding the trial court's failure to value the second residence. Hallowell v.County of Athens, Athens App. No. 03CA29, 2004-Ohio-4257, at ¶ 19-20. *Page 1