[Cite as *Jenkins v. Jenkins*, 2015-Ohio-5484.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| CARRIE JENKINS, | : | Case No. 14CA30 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| MICHAEL JENKINS, | : | |
| Defendant-Appellant. | : | RELEASED: 12/21/2015 |

APPEARANCES:

J. Roger Smith, II, Esq., Law Offices of J. Roger Smith, II, Huntington, West Virginia, for appellant.

Robert C. Anderson, Esq., Anderson & Anderson, Co., L.P.A., Ironton, Ohio, for appellee.

Hoover, P.J.

{¶ 1} Following trial, the Lawrence County Common Pleas Court granted plaintiff-appellee, Carrie Jenkins ("Carrie"), and defendant-appellant, Michael Jenkins ("Michael"), a divorce based on incompatibility. In its property division, the trial court determined that $51,500 in cash taken by Carrie from a safe in the parties' marital residence constituted a marital asset and ordered that it be equally divided between the parties. The trial court further determined that Michael's retirement account had a marital value $14,614 greater than that of Carrie's retirement account. Instead of requiring a qualified domestic relations order ("QDRO"), the trial court ordered that Michael pay her half of the difference as her share of his retirement funds. In addition, the trial court awarded certain personal property in accordance with an exhibit introduced at trial by Carrie. The trial court also awarded to Carrie a Ruger Mark III Pistol and

assorted compound and crossbows. Finally, the trial court found the Discover credit card debt to be a marital debt and ordered the parties to equally divide the debt.

{¶ 2} On appeal, Michael asserts in his first assignment of error that the trial court's classification of the $51,500 in cash in the parties' safe as marital property was against the manifest weight of the evidence. Michael testified at trial that the cash came from the sale of premarital inventory from his medicinal root-selling business. The final divorce hearing was not completed in one session. Several sessions were needed to complete the presentation of evidence of the parties. In a later hearing, Michael also testified that a portion of the cash came from the sale of a vehicle that he owned prior to their marriage. However, the trial court discounted Michael's evidence based on his numerous inconsistencies in testifying about the pertinent events. In addition, the parties' tax return for 2005, the year Michael claimed that a sale of roots to one customer provided the bulk of the money in the safe, specified a beginning business inventory of zero. This zero figure supported the trial court's conclusion that the money generated from the sale was from roots acquired during the parties' marriage rather than roots acquired by Michael before the parties married. Finally, Carrie introduced evidence that Michael continued to engage in both his root and taxidermy businesses during the marriage and that they placed cash from these sales in the safe and took cash out of it to pay for purchases. Based on this evidence, the trial court did not clearly lose its way or create a manifest miscarriage of justice in finding that the $51,500 in cash that Carrie took from the parties' safe constituted marital property. We overrule Michael's first assignment of error.

{¶ 3} In the second assignment of error, Michael contends that the trial court erred in dividing the parties' personal property by failing to award him the Ruger Mark III pistol and certain compound bows and crossbows. Michael introduced no evidence supporting his claim

that the pistol constituted separate property that should have been awarded to him. Consequently, the trial court did not abuse its discretion in awarding the pistol to Carrie. However, Michael presented uncontroverted testimony that two of the bows taken by Carrie were his separate property and should have been awarded to him. Therefore, we sustain this assignment of error in part and overrule it in part.

{¶ 4} Michael claims in the third assignment of error that because the trial court erred in classifying the $51,500 in cash as marital property, it further erred by denying his request for a QDRO to divide the parties' retirement accounts. Because this claim is premised upon Michael's erroneous assertion in his first assignment of error, we likewise reject this claim and overrule his third assignment of error.

{¶ 5} In his fourth assignment of error, Michael asserts that the trial court's classification of the debt on the Sam's Club Discover card in Carrie's name as marital debt rather than her separate debt was against the manifest weight of the evidence. Carrie testified that although the card was in her name, the purchases made on it were incurred during the marriage for marital purposes and constituted marital debt. Michael could not rebut her testimony, instead claiming that he had no idea about the purchases on the card. Therefore, the trial court's classification of the debt as marital debt is not against the manifest weight of the evidence. We overrule his fourth assignment of error.

{¶ 6} Therefore, having sustained a portion of Michael's second assignment of error, we reverse the portion of the judgment of the trial court awarding two of the bows that constituted his separate property to Carrie and remand the cause to that court to award these bows to

Michael as part of the property division. We overrule the remainder of Michael's assignments of error and affirm the rest of the judgment.

## I. Facts and Procedural Posture

{¶ 7} Carrie and Michael married in October 2002. No children were born as issue of the marriage. The parties became incompatible; and in October 2012, Carrie filed for divorce. Michael filed an answer and a counterclaim for divorce. Michael asserted that when Carrie left the parties' marital residence, she wrongfully removed $51,500 from it. Michael claimed that the $51,500 represented proceeds from the sale of inventory in his root-selling business, which he purchased with his own separate funds before their marriage. Although Carrie denied wrongfully removing the money, she agreed to the terms of the trial court's emergency temporary order. The order directed her to keep the $51,500 she had deposited in a bank and precluded her from withdrawing any of those funds until further order of the court.

{¶ 8} A trial was held before a magistrate over three separate days in 2013. The following pertinent evidence was adduced. Michael worked making waterline pipe for Endot Industries until 2005 and thereafter as a machine operator for Leibert. The value of his retirement plan was $34,180. In addition, Michael had a medicinal root-selling business and a taxidermy business. For the root business, he would purchase goldenseal and ginseng from diggers and then resell them.[1] From this root business, purportedly $51,500 or a portion of it was earned that is the crux of the parties' property dispute.

---

[1] Goldenseal is "a plant * * * of the buttercup family, having a thick yellow rootstock * * * formerly used in medicine as an astringent and to inhibit bleeding" and ginseng is "any of several plants * * * having an aromatic root used medicinally." *Webster's New Universal Unabridged Dictionary* 807, 819-820 (2003).

{¶ 9} Michael's testimony regarding the $51,500 was not consistent. He initially testified in a deposition that all of this money was generated between 2003 and 2005 by his sale of roots that he had acquired prior to the parties' marriage to a customer named Brent (aka Steve) Duncan. At the deposition, Michael also said that Duncan paid him the $51,500 and that he handled the sale and put the cash in a safe at the marital residence. At the first trial hearing, however, Michael changed his testimony and said that his $51,500 sale of roots to Duncan could have happened in 2006 and that his father and brother handled the sale instead of him. At the second trial hearing, Michael changed his testimony again by stating that he had found receipts that established he sold goldenseal to Duncan in February 2005 for $46,143 and that he subsequently placed an additional $3,000 in the safe from selling a Jeep he had owned separately before his marriage.

{¶ 10} According to Michael, he quit buying roots for his root-selling business in 1998 or 1999, before he married Carrie in 2002. Michael also testified that he did not purchase any more roots during their marriage. Therefore, according to him, the goldenseal he sold to Duncan in 2005 must have been from root inventory he had acquired as his separate property before he was married in 2002. However, when he was confronted with an Ohio Department of Natural Resources form for sales of uncertified Ohio root from diggers, Michael conceded that he and Carrie acquired and sold roots to his father in January 2006. When asked about his inconsistent testimony, Michael admitted that his memory "[a]pparently * * * ain't" very good.

{¶ 11} Moreover, Michael introduced into evidence several years of the parties' joint tax returns, including their federal income tax return for 2005, the year he claimed he sold the goldenseal to Duncan, which provided most, if not all, of the $51,500 in money in the safe that the parties disputed. That tax return specified that Michael had engaged in a business comprised

of taxidermy and root sales in that year. The tax return demonstrated over $66,000 in gross sales

for the year; however, the tax return indicated no beginning or ending inventory for the business.

Although Michael's 2005 tax return controverted his testimony that his sale to Duncan consisted

of goldenseal inventory that he had acquired in 1998 or 1999 by showing no inventory on hand

at the start of the year, he repeatedly stated that he stood by his tax returns and that they were

correct.

{¶ 12} Carrie consistently testified that on numerous occasions during the marriage, she

placed cash receipts from their taxidermy business in the safe so that it was impossible to tell

how much of the cash was from the taxidermy business and how much was from root sales.

According to Carrie, after they got married, Michael continued to buy and sell roots, and they put

money in and took money out of the safe all the time. For example, in March 2005, Michael took

$10,000 from the safe and bought a Dodge Dakota with the money. Michael claimed that he used

their 2004 tax refund and cash he had in his pocket to pay over $9,000 to buy the pickup truck,

but his tax return was signed only ten days before he bought the vehicle.

{¶ 13} When Carrie moved out of the residence in October 2012, she took the $51,500 in

cash that was in the parties' safe, informed Michael that she had done so, and subsequently put it

all in the bank until the court could determine the distribution of the monies. Some of the bills

had 2006 and 2009 dates on them, i.e., they could not have been put in the safe as a result of the

2005 sale of goldenseal to Duncan. According to Carrie, the money in the safe was marital

property because Michael acquired roots during the marriage that he sold.

{¶ 14} Carrie further testified that the value of her retirement account with the School

Employees Retirement System was $19,566, which was $14,614 less than the value of Michael's

retirement account. She requested that they keep their individual retirement accounts and that

Michael pay her half of the difference in value of their accounts instead of the more complicated

alternative of each getting half of each other's retirement in the future. Michael requested that the

trial court order the alternative QDRO for the retirement accounts because Carrie had not

established that the $51,500 in cash that she took out of the safe was marital property.

{¶ 15} At trial, Carrie also submitted an exhibit that proposed a division of the parties'

personal property. The exhibit included columns indicating which items of personal property that

she took, which items she left with Michael, the values she assigned to the items, and for some of

the items, the source of her basis for valuing them. Under her proposed division of personal

property, Michael would receive $25,475 worth of personal property; and she would receive

significantly less, i.e., $11,005 worth of this property. In her proposed division of personal

property, she listed a Ruger Mark III pistol that she valued as $375 and "[c]ompound and cross

bows – Keith's" that she valued as $600 as items that she took and that she should be awarded.

{¶ 16} Michael objected to the requested disposition of the compound and cross bows to

her that she designated as Keith's, which referred to her son, because they were not Keith's

personal property. He testified that other than a Matthews bow that they bought for Keith and a

Hoyt crossbow they bought during the marriage, Carrie took a Fred Bear youth-model bow and a

Horton crossbow that he had purchased before their marriage. Carrie did not explicitly controvert

Michael's testimony concerning the specific bows he claimed were his separate property. For the

Ruger Mark III pistol, Michael did not submit any testimonial or documentary evidence

suggesting that the pistol was his separate as opposed to marital property.  Instead, on his direct

examination during the second day of trial concerning the items in Carrie's exhibit, his counsel

skipped over that item.

{¶ 17} Finally, Carrie testified that a $790 balance on a Sam's Club Discover card issued in her name only was marital debt because it was used for marital purchases, including a $100 purchase to research their family trees on ancestry.com that he told her to buy. For example, when asked whether the card was used for marital purchases, Carrie testified that "[e]verything that we done during the marriage was marital purchases." Michael testified that he had "no idea" about the Discover card and "no idea" about whether charges on that card were made during the marriage.

{¶ 18} In November 2013, the magistrate issued a decision granting the parties a divorce based on incompatibility and dividing the parties' property. The magistrate determined that the $51,500 that Carrie removed from the parties' safe and placed in a bank account constituted a marital asset and ordered that it be divided so that Carrie would receive about two-thirds of it. The magistrate also determined that rather than requiring a QDRO, Michael would pay to Carrie the sum of $7,307 as her share of their retirement funds. The magistrate additionally divided the parties' personal property with some changes to what Carrie requested, but awarded her the Ruger Mark III pistol and the bows and crossbows in accordance with her exhibit. The magistrate further ordered the parties to equally divide the marital debt of the Discover card.

{¶ 19} Both parties filed objections to the magistrate's decision and supporting memoranda. Although both parties filed objections, Carrie's objections are not before this Court; and we will not address the objections that she made to the magistrate's decision. On the other hand, Michael raised the following objections which reflect the issues in this appeal: (1) the magistrate erred in classifying the $51,500 Carrie removed from the parties' safe as marital property as opposed to his separate property; (2) the magistrate erred by failing to award him the Ruger Mark III pistol and certain compound bows and crossbows; (3) the magistrate erred by

failing to require a QDRO to divide the parties' retirement accounts because the $51,500 should

not have been treated as marital property to offset the retirement; and (4) the magistrate erred by

classifying the Discover card debt as marital debt for which he was partly responsible.

{¶ 20} In August 2014, the trial court entered a judgment granting the parties a divorce

based on incompatibility and dividing their property. The trial court denied Michael's objections

and granted most of Carrie's objections. The trial court classified the $51,500 in cash from the

parties' safe as a marital asset to be divided equally between the parties, classified the Discover

card balance as a marital debt that would be divided equally between the parties, ordered

Michael to pay half of the $14,614 difference in the values of their retirement accounts instead of

requiring a QDRO, and awarded Carrie the Ruger Mark III pistol and the bows and crossbows as

delineated in her exhibit.

{¶ 21} This appeal ensued.

## II. Assignments of Error

{¶ 22} On appeal, appellant asserts four assignments of error for review:

Statement of Assignment of Error No. 1:

The trial court committed reversible error in finding that the $51,500.00 Appellee

removed from the parties' gun safe was marital property, as shown by the

transcript of the evidentiary hearings held below, as said decision by the lower

court was not supported by the evidence and was otherwise against the manifest

weight of the evidence and/or an abuse of discretion.

Statement of Assignment of Error No. 2

The trial court committed reversible error in the division of the parties' personal property by failing to award the Appellant the Ruger pistol, certain compound bows and cross bows, as shown by the transcript from the evidentiary hearings held below, as said decision by the lower court was not supported by the evidence and was otherwise against the manifest weight of the evidence and/or an abuse of discretion.

### Statement of Assignment of Error No. 3

The trial court committed reversible error by failing to require a Qualified Domestic Relations Order (Q.D.R.O.) be prepared, as requested by Appellant's counsel, as money should not have been offset from the $51,500.00 which Appellant argues was/is his separate property as shown by the transcript of the evidentiary hearings held below and, instead, a Q.D.R.O. should have been ordered to be prepared and entered which would accurately divide the parties [sic] respective retirements as said decision to offset the parties' retirement accounts was not supported by the evidence and was otherwise against the manifest weight of the evidence and/or an abuse of discretion.

### Statement of Assignment of Error No. 4

The trial court committed reversible error in the division of the Discover Card debt, which was solely in the Appellee's name and was not used by the Appellant during the marriage, as shown by the transcript of the evidentiary hearings held below, and said decision by the lower Court was not supported by the evidence and was otherwise against the manifest weight of the evidence and/or an abuse of discretion.

### III. Law and Analysis

### A. Standard of Review for Characterization of Property as Separate or Marital

{¶ 23} In *Girton v. Girton*, 4th Dist. Athens No. 08CA30, 2009-Ohio-4458, ¶ 10, we previously set forth the standard of review for a trial court's characterization of property as separate or marital as follows:

"* * * [A] trial court's characterization of property as separate or marital is reviewed under a manifest weight of the evidence standard of review." *Nance v. Nance* (Mar. 6, 1996), Pike App. No. 95CA553, 1996 WL 104741, at *5. Thus, the court's characterization "will not be reversed if it is supported by some competent, credible evidence." *Id.* The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Therefore, the trier of fact determines the credibility to be afforded testimony and the weight to be given evidence. *State v. Ball,* Hocking App. No. 07CA2, 2008-Ohio-337, ¶ 21, citing *State v. Dye,* 82 Ohio St.3d 323, 329, 1998-Ohio-234, 695 N.E.2d 763; *State v. Frazier,* 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000. "The factfinder may accept or reject all, part, or none of the testimony of each witness." *In re A.E.,* Greene App. No.2006 CA 153, 2008-Ohio-1864, ¶ 15, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.

"We will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment." *Pinkerton v. Salyers*, 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶ 18.

### B. Standard of Review for Distribution of Marital Property

{¶ 24} In a divorce proceeding, the division of the parties' property is governed by R.C. 3105.171. The trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). This is done under the manifest weight of the evidence standard of review as set forth previously. Next, the trial court must value the property. *Bray v. Bray*, 4th Dist. Ross No. 10CA3167, 2011-Ohio-861, ¶ 28. Finally, the court shall divide the marital and separate property equitably between the spouses. R.C. 3105.171(B). Because the trial court possesses considerable discretion in reaching an equitable distribution, we will not reverse its division of property absent an abuse of that discretion. *See generally King v. King*, 4th Dist. Washington No. 13CA7, 2014-Ohio-5836, ¶ 14.

### C.  Characterization of $51,500 from the Parties' Safe as Marital Property

{¶ 25} In his first assignment of error, Michael asserts that the trial court's classification of the $51,500 Carrie removed from the parties' safe as marital property was against the manifest weight of the evidence. Michael does not claim that the trial court's overall division of property is inequitable; instead, he challenges certain aspects of it. In his first assignment of error, he contests the trial court's classification of the $51,500 in cash that Carrie took from the parties' safe as marital property. As pertinent here, "marital property" is "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during

the marriage[.]" R.C. 3105.171(A)(3)(a)(i). "Marital property" does not include any separate property of the parties, which is defined to encompass "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C. 3105.171(A)(3)(b) and (A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). In general, a trial court dividing property in a divorce must "disburse a spouse's separate property to that spouse." R.C. 3105.171(D).

{¶ 26} Based on these statutory provisions, all property acquired during the marriage is presumed to be marital property. *See Stapleton v. Stapleton*, 4th Dist. Lawrence No. 12CA10, 2012-Ohio-6280, ¶ 10; *Akers v. Akers*, 2015-Ohio-3326, 40 N.E.3d 699, ¶ 10 (7th Dist.). The party seeking to establish that an asset is separate property bears the burden of proof by a preponderance of the evidence to trace the asset to separate property. *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, 842 N.E.2d 1058, ¶ 21 (4th Dist.); *Campbell v. Campbell*, 11th Dist. Lake No. 2014-L-015, 2014-Ohio-5614, ¶ 21.

{¶ 27} Michael contends that the $51,500 in cash in the parties' safe was primarily generated by the sale of goldenseal root to Duncan in 2005. Because that sale occurred during the parties' marriage, the proceeds of it are presumed to be marital property. Michael had the burden to establish that they could be traced to separate property so as to constitute his separate property. In that regard, Michael claims that the root sale proceeds were traceable to his goldenseal inventory, which he acquired before his marriage to Carrie, as well as to the sale of a Jeep that he had purchased before he was married.

{¶ 28} The trial court discredited Michael's testimony that the money in the safe came from the sale of premarital, separate property because of his "inconsistent testimony". Michael testified at a pretrial deposition and on the first day of the trial that he received all of the $51,500 from his sale of goldenseal to Duncan; however, he later testified that he received about $46,000 from that sale and an additional $3,000 from the sale of a Jeep. In addition, Michael testified at his deposition that he personally handled the transaction with Duncan. In contrast, he later testified at trial that his father and brother handled the transaction for him while he was at work. Finally, Michael testified that he quit buying roots in 1998 or 1999, a few years before he married Carrie. However, on cross-examination, Michael admitted that he acquired and sold roots to his father in 2006. Ultimately, Michael conceded that his memory "apparently * * * ain't" very good.

{¶ 29} Moreover, Michael claimed that he sold goldenseal to Duncan in 2005 with goldenseal that he had acquired as part of his inventory in 1998 or 1999. The parties' joint income tax return for 2005 contradicted this assertion. The return indicated that he had no beginning or ending inventory for his taxidermy and root-selling business in that year. This logically means that he must have acquired the goldenseal in that year to sell it to Duncan. When confronted with the discrepancy between his tax return and his testimony, Duncan testified that he stood by his returns and that they were correct. Finally, Carrie consistently testified that she placed cash receipts from their taxidermy business in the safe, that Michael continued to buy and sell roots during their marriage, and that they both put cash in and took it out of the safe during the marriage. Carrie testified to an example of this by explaining the events when Michael took out $10,000 from the safe to buy a Dodge Dakota.

{¶ 30} Based on this evidence, including Michael's numerous inconsistencies and admitted lack of memory, the trial court did not clearly lose its way or create a manifest miscarriage of justice in determining that Michael had not rebutted the presumption that the $51,500 cash in the parties' safe constituted marital property. This is not the exceptional case in which the evidence weighs heavily against the trial court's judgment classifying this asset as marital property. Therefore, we overrule Michael's first assignment of error.

### D. Distribution of Pistol and Bows

{¶ 31} In his second assignment of error, Michael contends that the trial court erred in dividing the parties' personal property by failing to award him a Ruger Mark III pistol and certain compound bows and crossbows. The trial court awarded these contested items of personal property to Carrie in accordance with her trial exhibit listing them as items she took from the marital home and valued.

{¶ 32} In support of his contention, Michael argues that the trial court erred by failing to classify these items of personal property as marital or separate property of the parties. Michael also claims that the trial court erred further by failing to place a value on the specific bows about which he testified. In this regard, the trial court overruled his objection to the magistrate's decision awarding these items of personal property to Carrie. In his objection to the magistrate's decision, Michael did not contend that the magistrate erred by failing to classify and value these items of personal property. He did, however, object to the trial court's award of these items of personal property to Carrie.

{¶ 33} For his argument that the trial court erred in failing to classify and value these items of personal property, that argument is not assigned as error so we need not address it. *See*

*Keltz v. Enchanted Hills Community Assn.*, 4th Dist. Highland No. 12CA16, 2014-Ohio-866, ¶ 21, quoting *State v. Gwinn*, 196 Ohio App.3d 296, 2011-Ohio-5457, 963 N.E.2d 212, ¶ 26 (4th Dist.) (" 'Appellate courts review assignments of error, not mere arguments' "). Nor does he specifically argue plain error. We will generally not construct a plain-error claim on behalf of an appellant if the appellant fails to argue plain error on appeal. *See Wilson v. Farahay*, 4th Dist. Adams No. 14CA994, 2015-Ohio-2509, ¶ 34. Therefore, this argument is not properly before us.

{¶ 34} But Michael does properly contest the trial court's decision to award the Ruger Mark III pistol and certain of the bows to Carrie, which he preserved by objecting to the magistrate's decision doing so in accordance with Carrie's trial exhibit.

{¶ 35} For the Ruger Mark III pistol, however, Michael appears to suggest that the trial court erred in failing to award it to him because it constituted his separate property. "If the parties contest whether an asset is marital or separate property, the asset is presumed marital property, unless it is proven otherwise." *See Dach v. Homewood*, 10th Dist. Franklin Nos. 14AP-502, 14AP-503, 2015-Ohio-4191, ¶ 33, citing *Miller v. Miller*, 7th Dist. Jefferson No. 08 JE 26, 2009-Ohio-3330, ¶ 20. Michael introduced no evidence, testimonial or otherwise, supporting his claim first raised in his post-trial objections to the magistrate's decision that the pistol was his separate property, i.e., that he owned it before the parties were married. Instead, it appears that his counsel, on direct examination going through the items specified on Carrie's trial exhibit, skipped over this item. Therefore, Michael did not rebut the presumption that the pistol was marital property. Michael has not established that the trial court abused its discretion by awarding the pistol to Carrie.

{¶ 36} In contrast, with respect to the bows, Michael provided uncontroverted testimony that a Fred Bear youth-model bow and a Horton crossbow were his separate property that he had owned prior to the marriage; but Carrie had taken them from the marital residence. Carrie failed to specifically rebut this testimony. Consequently, the trial court abused its discretion in awarding these bows to Carrie based on Michael's uncontroverted testimonial evidence that they were his separate property.

{¶ 37} Therefore, we sustain Michael's second assignment of error regarding the two bows that are his separate property. We overrule the remainder of his second assignment of error.

### E. Qualified Domestic Relations Order

{¶ 38} In his third assignment of error, Michael asserts that because the trial court erred in classifying the $51,500 in cash from the parties' safe as marital property, it further erred in denying his request for a QDRO to divide the parties' retirement accounts.

{¶ 39} "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990), paragraph one of the syllabus. "Accordingly, a trial court's distribution of pension or retirement benefits will not be disturbed on appeal absent an abuse of that discretion." *Soulsby v. Soulsby*, 4th Dist. Meigs No. 07CA1, 2008-Ohio-1019, ¶ 10. A trial court abuses its discretion when it is unreasonable, arbitrary, or unconscionable. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19.

{¶ 40} Based on the parties' evidence, the trial court determined that the value of Michael's retirement account was $14,614 greater than the value of Carrie's retirement account. Instead of ordering a QDRO, as Michael had requested, the trial court exercised its discretion to have Michael pay Carrie the difference in value between their retirement accounts.

{¶ 41} Michael asserts that the trial court abused its discretion by failing to enter a QDRO to divide their retirement benefits because the $51,500 in cash from the parties' safe constituted separate property. Thus, it could not have constituted marital property to offset the parties' retirement benefits. Because Michael's claim is premised upon his erroneous assertion in his first assignment of error that the trial court erred in classifying the $51,500 in cash from the parties' safe as marital property, his claim is meritless.

{¶ 42} Moreover, in making a fair and equitable distribution of parties' pension and retirement benefits in a divorce, "[t]he trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." *Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292, at paragraph two of the syllabus; *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, 11 N.E.3d 1119, ¶ 13. The trial court's decision to order Michael to pay half of the difference in value between the parties' retirement accounts to Carrie instead of ordering a QDRO to divide their benefits in the future advanced these goals.

{¶ 43} Therefore, the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in failing to order the QDRO requested by Michael to divide the parties' retirement benefits. We overrule Michael's third assignment of error.

**F. Division of Discover Card Debt**

{¶ 44} In his fourth assignment of error, Michael claims that the trial court erred in ordering that the Discover card debt of $790 be divided equally between the parties. Michael essentially argues that the trial court's classification of his wife's Discover card debt as marital debt was against the manifest weight of the evidence. *See, e.g., Forman v. Forman*, 3d Dist. Marion No. 9-13-67, 2014-Ohio-3545, ¶ 33 ("This court reviews a trial court's classification of debt as marital or separate debt under a manifest weight of the evidence standard").

{¶ 45} Although R.C. 3105.171 does not define what constitutes marital debt of the parties, courts have defined it as any debt incurred during the marriage for the joint benefit of the parties or for a marital purpose. *See Trolli v. Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 32, citing Turner, *Equitable Distrib. of Property*, Section 6.29, 455 (2d Ed.1994, Supp.2002); *Elliott v. Elliott*, 4th Dist. Ross No. 03CA2737, 2004-Ohio-3625, ¶ 16; *see also Graves v. Graves*, 4th Dist. Vinton No. 14CA694, 2014-Ohio-5812, ¶ 15, quoting *Polacheck v. Polacheck*, 9th Dist. Summit No. 26551, 2013-Ohio-5788, ¶ 18 (" 'marital debt is subject to allocation as part of the property distribution and that debt allocation is guided by the same equitable factors contained in R.C. 3105.171.' ").

{¶ 46} Michael argues that the trial court's decision was against the manifest weight of the evidence because the Discover card was solely in Carrie's name, was used solely for her benefit, and was not used by Michael during the marriage except for, at best, a $100 purchase for ancestry.com that he had approved.

{¶ 47} Michael's argument is meritless. First, "[t]he mere fact that a debt is in the name of one spouse alone is not enough to establish that the debt was the spouse's separate debt." *See Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, ¶ 62, citing

*Cooper v. Cooper*, 12th Dist. Clermont No. CA2013–02–017, 2013–Ohio–4433, ¶ 18. Second,

Carrie testified that although the card was in her name, she used it only for marital purchases.

Third, Michael did not rebut Carrie's testimony, instead testifying that he had "no idea" about

the charges made on the card.

{¶ 48} Therefore, the trial court did not clearly lose its way or create a manifest

miscarriage of justice by classifying the Discover card balance as marital debt. Nor did it act in

an unreasonable, arbitrary, or unconscionable manner by ordering that the parties be equally

responsible for the credit card balance. We overrule Michael's fourth assignment of error.

### IV. Conclusion

{¶ 49} Therefore, for the most part, the trial court did not abuse its broad discretion in

dividing the property of the parties. Having sustained part of Michael's second assignment of

error, we reverse the judgment of the trial court insofar as it awarded the Fred Bear youth-model

bow and the Horton crossbow to Carrie, and remand the cause for the trial court to award these

items of personal property to Michael as his separate property. Having overruled the rest of

Michael's assignments of error, we affirm the remainder of the trial court's judgment.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART; and the CAUSE IS REMANDED. Appellant and Appellee shall equally divide the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, A.J.: Concurs in Judgment Only as to Assignment of Error I, Assignment of Error II in part, Assignment of Error III, and Assignment of Error IV. Dissents on Assignment of Error II in part.

For the Court

BY: _____
      Marie Hoover
      Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**